SMIGEL v SOUTHGATE COMMUNITY SCHOOL DISTRICT

DECISION OF THE COURT

1. LABOR RELATIONS—INJUNCTION.

Denial of injunction to restrain application of a collective bargaining agreement is reversed and case remanded to trial court.

OPINION FOR REVERSAL AND REMAND

T. M. KAVANAGH, C. J., and ADAMS and T. G. KAVANAGH, JJ.

2. ADMINISTRATIVE LAW—MICHIGAN EMPLOYMENT RELATIONS COMMISSION—STATUTES—CONSTRUCTION—COURTS.

Pure legal issues concerning construction of Michigan's statutes are not peculiarly within the scope of the expertise of the Michigan Employment Relations Commission and as such were properly brought before the circuit court.

3. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—PUBLIC EMPLOYER—PUBLIC EMPLOYEES—LABOR ORGANIZATIONS—UNIONS.

*An amendment of the public employment relations act in 1965*

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur 2d, Labor and Labor Relations § 1482 *et seq.*

[2, 16, 17, 22] 48 Am Jur 2d, Labor and Labor Relations § 1155 *et seq.*

[3, 9, 26] 48 Am Jur 2d, Labor and Labor Relations §§ 1191, 1196.

[4-11, 18, 21, 24, 27–29] 48 Am Jur 2d, Labor and Labor Relations §§ 18, 184, 797, 798, 1191, 1195.

Union organization and activities of public employees, 31 ALR2d 1142.

[11] Validity and construction of "right-touch" laws, 92 ALR2d 598.

[12] 20 Am Jur 2d, Courts §§ 92, 95.

[13] 2 Am Jur 2d, Administrative Law § 788 *et seq.*

[14] 2 Am Jur 2d, Administrative Law § 332.

[15, 17] 2 Am Jur 2d, Administrative Law §§ 595, 602, 603.

[19] 50 Am Jur, Statutes §§ 318–320, 326 *et seq.*

[20] 47 Am Jur, Schools §§ 134–137.

[23] 16 Am Jur 2d, Constitutional Law §§ 353–355.

Right of privacy, 14 ALR2d 750.

[25] 48 Am Jur 2d, Labor and Labor Relations §§ 184, 1195, 1197.

*not only authorized the formation of public employees' unions
but also incorporated the policy that an employer must assume
a posture of complete neutrality regarding union membership;
he must do nothing to either advance or retard union organiz-
ing and he must refrain from practices which either encourage
or discourage membership in labor organizations (MCLA
423.201 et seq.).*

4. LABOR RELATIONS—AGENCY SHOP—UNION SHOP—PUBLIC EMPLOY-
MENT RELATIONS ACT.

*The traditional "agency shop" provision is a well known type of
union security clause; its terms are often such as to render it
the practical equivalent of a union shop and as such it by
definition contravenes the policy and purposes of the public
employment relations act (MCLA 423.201 et seq.).*

5. LABOR RELATIONS—AGENCY SHOP—SCHOOLS AND SCHOOL DISTRICTS
—TEACHERS' ASSOCIATION—DUES—REPRESENTATION EXPENSES—PUB-
LIC EMPLOYMENT RELATIONS ACT.

*"Agency shop" provision in a contract between a school district
and a teachers' association, providing that the payroll deduc-
tion for nonmembers is "a representation fee equivalent to the
dues and assessments of the Association (including the Na-
tional and Michigan Education Associations)" in which there is
not even the pretense that the sum to be deducted is a pro rata
share of representation expenses, or that it will even be used
for such purpose, is repugnant on its face to the provisions of
the public employment relations act (MCLA 423.201 et seq.).*

6. LABOR RELATIONS—AGENCY SHOP—SCHOOLS AND SCHOOL DISTRICTS
—TEACHERS' ASSOCIATION—COLLECTIVE BARGAINING EXPENSES—
DUES—PUBLIC EMPLOYMENT RELATIONS ACT—LABOR ORGANIZATIONS
—DISCRIMINATION—INJUNCTION.

*Any "agency shop" clause in a contract between a school district
and a teachers' association, providing that the payroll deduc-
tion for nonmembers is "a representation fee equivalent to the
dues and assessments of the Association (including the Na-
tional and Michigan Education Associations)", which makes no
effort to relate the nonmembers' economic obligations to actual
collective bargaining expenses is clearly prohibited by a section
of the public employment relations act, as of necessity either
encouraging or discouraging membership in a labor organiza-
tion; there appears upon the face of the contract de jure
discrimination of a magnitude sufficient to invalidate the clause
and the trial court erred in denying public school teachers
employed by the school board but not members of that teach-*

*ers' association injunctive relief from the collective bargaining agreement (MCLA 423.210).*

OPINION CONCURRING IN PART AND DISSENTING IN PART

WILLIAMS, J.

See headnotes 2, 15, and 17.

7. LABOR RELATIONS—AGENCY SHOP—PUBLIC EMPLOYMENT RELATIONS ACT.

*An "agency shop" is not permitted by a section of the public employment relations act because that act fails to include a savings clause for union security (MCLA 423.201 et seq.).*

8. LABOR RELATIONS—UNION DUES—AGENCY SHOP.

*Requirement that non-union members pay the union a sum equivalent to initiation fees and periodic dues is valid where the "agency shop" is valid.*

OPINION FOR REVERSAL

T. E. BRENNAN, J.

9. LABOR RELATIONS—PUBLIC EMPLOYER—LABOR ORGANIZATIONS—DISCRIMINATION—CLOSED SHOP CONTRACTS—UNIONS.

*Statute, providing in part that "[i]t shall be unlawful for a public employer or an officer or agent of a public employer * * * to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization * * * ", does not address itself merely to all-union or closed shop agreements, it prohibits terms or conditions of employment which are designed to encourage membership in a labor organization (MCLA 423.210).*

10. LABOR RELATIONS—UNION DUES—UNION SHOP CONTRACTS.

*A so-called agency shop contract which makes the payment of dues and assessments of unions or the equivalent of such dues and assessments a condition of employment and which imposes the same obligation upon nonmembers is the practical equivalent of a union shop contract.*

11. LABOR RELATIONS—RIGHT TO WORK—PUBLIC EMPLOYMENT—STATUTES.

*Statute, providing in part that "[i]t shall be unlawful for a public employer or an officer or agent of a public employer * * * to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership*

*in a labor organization* * * * *", is in effect a "right to work"
law, limited to public employment (MCLA 423.210[c]).*

OPINION FOR AFFIRMANCE IN PART AND REVERSAL IN PART

SWAINSON, J.

12. COURTS—JURISDICTION—WAIVER.

*Lack of subject matter jurisdiction cannot be waived; a court may
and, indeed, has a duty to inquire into its jurisdiction.*

13. ADMINISTRATIVE LAW—PRIMARY JURISDICTION—FACTUAL QUES-
TIONS.

*Michigan Supreme Court has recognized the doctrine of primary
jurisdiction and judicial deference to the expertise of adminis-
trative agencies which are well suited in the first instance to
deal with the factual questions involved.*

14. ADMINISTRATIVE LAW—JURISDICTION—INJUNCTION—DECLARATORY
JUDGMENT.

*An administrative agency has the authority in the first instance
to determine its own jurisdiction and an injunction or declara-
tory judgment will not lie to challenge the jurisdiction of an
administrative agency.*

15. EQUITY—INJUNCTION—CONSTITUTIONAL LAW—STATUTES.

*The jurisdiction of equity may be invoked for the purpose of
obtaining injunctive relief and a determination as to the consti-
tutionality of the statute that is involved in cases where an
irreparable injury will result from the acts of public officials in
attempting to proceed under an invalid law; plaintiffs' case,
which sought an injunction to restrain application of a collect-
ive bargaining agreement and damages, would fit under this
exception to the rules requiring that a party exhaust his
administrative remedies prior to seeking judicial relief.*

16. ADMINISTRATIVE LAW—MICHIGAN EMPLOYMENT RELATIONS COM-
MISSION—SUPREME COURT—QUESTIONS OF LAW—AGENCY SHOP—
TEACHERS' TENURE ACT—CRIMINAL LAW.

*The special expertise of the Michigan Employment Relations
Commission is not helpful to the Michigan Supreme Court in
determining questions of law, where the basic facts were agreed
upon by the parties and the questions were whether an agency
shop provision violated the teachers' tenure act and the Michi-
gan Penal Code (MCLA 38.71 et seq., 750.353 et seq.).*

17. ADMINISTRATIVE LAW—LABOR RELATIONS—EXHAUSTION OF REMEDIES—INJUNCTIVE RELIEF—TEACHERS' TENURE ACT.

*A factor that courts consider in determining whether to require exhaustion of administrative remedies is the importance of the question involved; thus, a complaint for injunctive relief to restrain application of a collective bargaining agreement which contained an agency shop provision was a proper procedure and the circuit court had jurisdiction of this matter, as the validity or invalidity of the agency shop provision will have far-reaching consequences upon collective bargaining in the public sector in Michigan (MCLA 38.71 et seq., 750.353 et seq.).*

18. LABOR RELATIONS—AGENCY SHOP—CONTRACTS.

*An agency shop provision may be voluntarily agreed upon by the parties to a labor contract and such an agreement does not violate the provisions of the public employment relations act (MCLA 423.201 et seq.).*

19. STATUTES—CONSTRUCTION—LEGISLATORS—LEGISLATIVE INTENT—EVIDENCE—SUPREME COURT.

*Statements of legislators and other citizens provide only some evidence of legislative intent of a statute; they are not conclusive on the Michigan Supreme Court.*

20. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—REASONABLE AND JUST CAUSE—STATUTES—LEGISLATIVE POLICY—NOTICE—HEARING.

*The words "reasonable and just cause" in the teacher tenure act are not defined, but are to be determined on a case-by-case basis; the legislative policy behind the section providing "[d]ischarge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided" is clearly to prevent the firing of qualified teachers because of arbitrary and capricious actions on the part of school boards; the requirement of an agency shop fee, arrived at after mutual bargaining by a school board and the elected representatives of all the teachers, is neither arbitrary nor capricious and does not violate the terms of the teachers' tenure act (MCLA 38.101).*

21. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—UNION DUES—AGENCY SHOP FEE.

*The provisions of the public employment relations act are not violated when nonmembers are required to pay an equivalent*

amount as the union dues as an agency shop fee (MCLA 423.201 et seq.).

22. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMISSION—AGENCY SHOP.

The Legislature has decreed that the Michigan Employment Relations Commission has jurisdiction where charges of unfair labor practices are made; thus, a Court of Appeals decision, which held any amount of agency shop fee could only be the nonmembers' proportional share of the cost of negotiating and administering the contract involved, which might or might not be the equivalent to membership dues, and directed the circuit court to hold a hearing on the matter, directly invaded the function of the MERC and overruled the specific legislative intent to vest the MERC with jurisdiction in matters involving unfair labor practices.

23. LABOR RELATIONS—UNIONS—CONSTITUTIONAL LAW—ASSOCIATION—PRIVACY, RIGHT OF.

Court of Appeals' holding, that would require a labor union to disclose a great deal of information on the internal function of the union, may violate the members' constitutional rights of freedom of association and the right to privacy as well as unduly interfering with the internal functions of a union.

24. LABOR RELATIONS—AGENCY SHOP—REPRESENTATION FEE—UNIONS—UNION DUES—DISCRIMINATION.

A representation fee equivalent to the amount of union dues is valid and not discriminatory to the non-union members of the labor organization who receive like benefits as members through the collective bargaining process conducted by the duly designated representative bargaining unit.

DISSENTING OPINION

BLACK, J.

25. LABOR RELATIONS—PUBLIC EMPLOYER—PUBLIC POLICY—PUBLIC EMPLOYEES—LEGISLATURE—COURTS—AGENCY SHOP.

What the public policy should or should not be in the area of a negotiated agency shop provision in a collective bargaining agreement between a public employer and public employees is the task of the Legislature and not the task of the courts; the task of an appellate court is to determine the validity of the contract provision before it according to existing policy as legislatively announced and that precludes consideration of precedents in the private employment field.

26. LABOR RELATIONS—PUBLIC EMPLOYERS—PUBLIC EMPLOYEES.

*A public employer must maintain a position of neutrality with respect to membership or non-membership in a labor organization when dealing with its public employees (MCLA 432.210).*

27. LABOR RELATIONS—PUBLIC EMPLOYEES—AGENCY SHOP—UNION MEMBERS—NON-UNION MEMBERS.

*The Legislature did not intend to eliminate agency shop agreements in public employment collective bargaining contracts; if benefits derive from such bargaining, non-union as well as union members enjoy those benefits, and it would be inequitable not to require non-union members to pay their proportionate share of the cost of obtaining and administering such benefits (MCLA 423.210, 423.211).*

28. LABOR RELATIONS—SCHOOLS AND SCHOOL DISTRICTS—AGENCY SHOP —DUES.

*The validity of an agency shop provision in a collective bargaining agreement between a school district and a teachers' association hinges on the relationship between payment of a sum equivalent to dues of teachers' associations and a non-member's proportionate share of the cost of negotiating and administering the contract involved; if that payment is greater or less than that proportionate share, then the agency shop provision is invalid under a statute prohibiting a public employer, its officer or agent, from discriminating in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization (MCLA 423.210).*

29. LABOR RELATIONS—CRIMINAL LAW—STATUTES—WAGES—AGENCY SHOP.

*Statute, providing that any employer who makes any deductions from employees' wages without their consent is guilty of a misdemeanor, was inapplicable where the terms of an agency shop provision in a collective bargaining agreement between a school district and a teachers' association preclude deduction without authorization (MCLA 750.353).*

Appeal from Court of Appeals, Division 1, Quinn, P. J., and J. H. Gillis and O'Hara, JJ., reversing and remanding Wayne, Thomas J. Foley, J. Submitted September 17, 1971. (No. 50 June Term 1971, Docket No. 53,008.) Decided November 29, 1972. Rehearing denied January 30, 1973.

24 Mich App 179 reversed.

Complaint by Jean Smigel and others against Southgate Community School District, Southgate Education Association, Donald Kouba and others for an injunction to restrain application of a collective bargaining agreement and damages. Injunction denied. Plaintiffs appealed to the Court of Appeals by leave granted. Reversed and remanded. Defendants appeal. Reversed and remanded.

*Clark, Hardy & Lewis* (by *Charles L. Fine*), for plaintiffs.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellman, Robert J. Finkel, Daniel J. Hoekenga,* and *Wallace K. Sagendorph*), for defendant Southgate Education Association and its officers.

*Amicus Curiae:*

Detroit Federation of Teachers (by *Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid*).

Michigan Employment Relations Commission (by *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General).

American Federation of State, County and Municipal Employees, AFL-CIO (by *Zwerdling, Miller, Klimist & Maurer*).

Michigan Conference of Teamsters (by *Goldberg, Previant & Uelmen [John S. Williamson, Jr.]*).

T. M. KAVANAGH, C. J. *(for reversal and remand).* We concur with Justice SWAINSON that the pure legal issues concerning construction of our

statutes are not peculiarly within the scope of the expertise of the Michigan Employment Relations Commission and as such were properly brought before the circuit court.

However, we do not agree that the trial court correctly denied the plaintiffs injunctive relief. The determinative issue which must be resolved in this case is:

Does the "agency shop" provision involved in the instant case create the practical equivalent of a "union shop" and, as such, is it prohibited by § 10 of the public employment relations act?

It should be emphasized at the outset that this case involves public employees and is therefore controlled by the so-called public employment relations act.[1] The historical backdrop against which we must view this statute is most significant. The original act[2] had as its stated purposes the prohibition of strikes by certain public employees and the provision for mediation of grievances. It was not until its amendment in 1965 that the statute granted public employees the right to organize and bargain collectively. 1965 PA 379 not only authorized the formation of public employees' unions, but also incorporated the policy of the National Labor Relations Act—that an employer must assume a posture of complete neutrality regarding union membership. He must do nothing to either advance or retard union organizing. Likewise must he refrain from practices which either encourage or discourage membership in labor organizations.

In this respect there is a significant distinction in Michigan's labor law between public and private employees. Though MCLA 423.16; MSA 17.454(17) is nearly identical to MCLA 423.210;

[1] MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[2] 1947 PA 336.

MSA 17.455(10) in respect to the requirement of employer neutrality, the statute regarding private employment includes one very important provision which is not found in the public employment relations act. MCLA 423.14; MSA 17.454(15) constitutes an authorization of union security clauses whether in the form of "closed shop," "union shop" or "agency shop".

Prior to the 1965 amendment of the public employment relations act, public employees had no right to organize collectively for bargaining purposes. Defendant union de-emphasizes the significance of this fact in an attempt to show that public employees now have been granted, with the exception of the right to strike, all rights conferred upon private employees.

However, as we have already indicated, the specification of rights for public employment is narrower than for private employment. The Legislature accomplished this result by not including in the public employment relations act the right, specified in MCLA 423.14; MSA 17.454(15), to enter into agreements containing union security clauses.

Defendant union urges the position that an "agency shop" agreement is not an "all-union" agreement as contemplated by MCLA 423.14; MSA 17.454(15) and that therefore it need not be specifically authorized by the public employment relations act. While this might be true where an "agency shop" provision accomplishes no more than reimbursement to the union for services rendered to a nonmember, it is certainly not true whenever an "agency shop" agreement has the effect of either encouraging or discouraging union membership in violation of MCLA 423.210; MSA 17.455(10).

.

The traditional "agency shop" provision is a well known type of union security clause. Its terms are often such as to render it the practical equivalent of a union shop and as such it by definition contravenes the policy and purposes of the public employment relations act.

The United States Supreme Court has on at least two occasions opined that an "agency shop" provision imposing on employees the only enforceable membership obligation—payment of initiation fees and regular dues—is the practical equivalent of an all-union shop. *Retail Clerks International Association, Local 1625, AFL-CIO v Schermerhorn,* 373 US 746; 83 S Ct 1461; 10 L Ed 2d 678 (1963); *National Labor Relations Board v General Motors Corp,* 373 US 734; 83 S Ct 1453; 10 L Ed 2d 670 (1963).

Significant here is the specific choice of language in article II, paragraph 2 of the contract. The payroll deduction for non-members is "a representation fee *equivalent to the dues and assessments of the Association* (including the National and Michigan Education Associations)." (Emphasis added.) There is not even the pretense that the sum to be deducted is a pro rata share of representation expenses, or that it will even be used for such purpose. In *Retail Clerks v Schermerhorn, supra,* the "agency shop" clause, though specifically earmarking the funds for aiding the union in meeting collective bargaining expenses, was nevertheless found objectionable under the Florida "right-to-work" law. The Court reasoned (373 US 746, 752–754):

"There is no ironclad restriction imposed upon the use of nonmember fees, for the clause merely describes the payments as being for 'the purpose of aiding the Union' in meeting collective bargaining expenses. The

alleged restriction would not be breached if the service fee was used for both collective bargaining and other expenses, for the union would be 'aided' in meeting its agency obligations, not only by the part spent for bargaining purposes but also by the part spent for institutional items, since an equivalent amount of other union income would thereby be freed to pay the costs of bargaining agency functions.

"But even if all collections from nonmembers must be directly committed to paying bargaining costs, this fact is of bookkeeping significance only rather than a matter of real substance. It must be remembered that the service fee is admittedly the exact equal of membership initiation fees and monthly dues * * * .[6] Unions 'rather typically' use their membership dues 'to do those things which the members authorize the union to do in their interest and on their behalf.' If the union's total budget is divided between collective bargaining and institutional expenses and if nonmember payments, equal to those of a member, go entirely for collective bargaining costs, the nonmember will pay more of these expenses than his pro rata share. The member will pay less and to that extent a portion of his fees and dues is available to pay institutional expenses. The union's budget is balanced. By paying a larger share of collective bargaining costs the nonmember subsidizes the union's institutional activities. In over-all effect, economically, and we think for the purposes of § 14(b), the contract here is the same as the *General Motors* agency shop arrangement. Petitioners' argument if accepted, would lead to the anomalous result of permitting Florida to invalidate the agency shop but forbidding it to ban the present service fee arrangement under which collective bargaining services cost the nonmember more than the member.

---

" [6] 'Rather typically, unions use their members' dues to promote legislation which they regard as desirable and to defeat legislation which they regard as undesirable, to publish newspapers and magazines, to promote free labor institutions in other nations, to finance low cost housing, to aid victims of natural disaster, to support charities, to finance litigation, to provide scholarships, and to do those things which the members authorize the union to do in their interest and on their behalf.'

"We cannot take seriously petitioners' unsupported suggestion at

the oral argument that we must assume that the union spends all of its income on collective bargaining expenses. The record is entirely silent on this matter one way or the other and it would be unique indeed if the union expended no funds for noncollective bargaining purposes."

Following this reasoning we are compelled to conclude that the "agency shop" provision in the instant contract is repugnant on its face to the provisions of our public employment relations act.

We hold that any such clause as this which makes no effort to relate the nonmembers' economic obligations to actual collective bargaining expenses is clearly prohibited by § 10 of the public employment relations act, as of necessity either encouraging or discouraging membership in a labor organization.

Having so concluded, we hold that the trial court erred in denying plaintiffs injunctive relief. We see no need for an order remanding for proof of *de facto* discrimination in the assessment against nonmembers because there appears upon the face of the contract we have before us *de jure* discrimination of a magnitude sufficient to invalidate the clause.

Reversed and remanded to the trial court for the entry of injunctive relief consistent herewith.

ADAMS and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, C. J.

WILLIAMS, J. *(concurring in part and dissenting in part).* I concur in part with and dissent in part from the opinions of Chief Justice T. M. KAVANAGH, Justice T. E. BRENNAN and Justice SWAINSON. I concur in reversal and remand.

On the question of court jurisdiction *vis-a-vis* MERC to construe the pertinent statutes, I agree

with what the Chief Justice and Justice SWAINSON wrote that the Court has such jurisdiction.

On the question whether PERA § 10 permits an "agency shop," I agree with the Chief Justice and Justice T. E. BRENNAN that it does not. This is because PERA fails to include a savings clause for union security such as § 14 in private employment. *National Labor Relations Board v General Motors Corp,* 373 US 734, 738–739; 83 S Ct 1453; 10 L Ed 2d 670 (1963). See also *Retail Clerks International Association, Local 1625, AFL-CIO v Schermerhorn,* 373 US 746, 751; 83 S Ct 1461; 10 L Ed 2d 678 (1963). Otherwise, an "agency shop" can be compatible with a normal "right-to-work" law. *Meade Electric Co v Hagberg,* 129 Ind App 631; 159 NE2d 408 (1959).

On the question of the validity of an "agency shop" requirement that non-union members pay the union a sum equivalent to initiation fees, and periodic dues, I agree with Justice SWAINSON that where the "agency shop" is valid such a provision is valid. *National Labor Relations Board v General Motors Corp, supra,* 742–744.

T. E. BRENNAN, J. *(for reversal).* The issue here is whether the collective bargaining agreement entered into by the defendant school district would, if enforced, obligate the defendant, a public employer, to violate MCLA 423.210; MSA 17.455(10).

That section provides:

"Sec. 10. It shall be unlawful for a public employer or an officer or agent of a public employer * * * (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization; * * * ."

We said in *Judges of the 74th Judicial District v Bay County,* 385 Mich 710 (1971):

"The Bay County Commissioners in this case had entered into an all-union or closed shop agreement with the defendant International Union.

"In the private sector, such all-union agreements are permissible, despite the language of MCLA § 423.16[3] (Stat Ann 1968 Rev § 17.454[17][3]), which makes it unlawful for an employer to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in any labor organization.

"All-union agreements are permissible in the private sector because MCLA § 423.14 (Stat Ann 1968 Rev § 17.454[15]) specifically permits them.

" 'Sec. 14. Nothing in this act shall be construed to interfere with the right of an employer to enter into an all-union agreement with one labor organization if it is the only organization established among his employes and recognized by him, by consent, as the representative of a majority of his employes; nor shall anything in this act be construed to interfere with the right of the employer to make an all-union agreement with more than one labor organization established among his employes if such organizations are recognized by him, by consent, as the representatives of a majority of his employes.'

"In public employment, all-union agreements are not permitted. MCLA § 423.210(c) (Stat Ann 1968 Rev § 17.455[10][c]) prohibits discrimination by a public employer to encourage or discourage membership in a labor organization. The language of that subsection is identical to the language of MCLA § 423.16(3) (Stat Ann 1968 Rev § 17.454[17][3]).

"But no section parallel to MCLA § 423.14 (Stat Ann 1968 Rev § 17.454[15]) appears in PA 1947, No. 336 (MCLA § 423.201 *et seq.;* Stat Ann 1968 Rev § 17.455[1] *et seq.).*"

It is argued, however, that the Southgate agreement is not a prohibited all-union agreement, but

merely a so-called agency shop agreement, by which nonmembers of the exclusive bargaining agent organization are required to pay fees to the union as consideration for services rendered at the bargaining table.

MCLA 423.210 does not address itself merely to all-union or closed shop agreements. In the present context, it prohibits terms or conditions of employment which are designed to encourage membership in a labor organization.

The Southgate agreement makes the payment of dues and assessments of the Southgate, Michigan and National Education Associations, *or the equivalent* of such dues and assessments a condition of employment.

The payment of initiation fees and regular dues are the only obligations enforceable by discharge under § 8[a][3] of the National Labor Relations Act.

It follows that a so-called agency shop contract which imposes the same obligation upon nonmembers, is the practical equivalent of a union shop contract. *National Labor Relations Board v General Motors Corp,* 373 US 734; 83 S Ct 1453; 10 L Ed 2d 670 (1963).

MCLA 423.210(c) is in effect a "right to work" law, limited to public employment. Other states, construing similar provisions, have held agency shop agreements invalid. *Baldwin v Arizona Flame Restaurant,* 82 Ariz 385; 313 P2d 759 (1957); *Higgins v Cardinal Mfg Co,* 188 Kan 11; 360 P2d 456 (1961); see also, *Retail Clerks International Association, Local 1625, AFL-CIO v Schermerhorn,* 373 US 746; 83 S Ct 1461; 10 L Ed 2d 678 (1963).

The judgment of the trial court should be reversed and the cause remanded.

SWAINSON, J. *(for affirmance in part and reversal in part).* This case involves the validity of the agency shop provision in the public sector under the public employment relations act[1] (hereinafter called PERA) and the teachers' tenure act.[2]

In 1965, the Michigan Legislature amended the PERA[3] and provided for the right of public employees to form or join unions and bargain collectively. Pursuant to § 12 of this act (MCLA 423.212; MSA 17.455[12]),[4] a petition was filed with the Michigan Labor Mediation Board which held a secret ballot election. The Southgate Education Association (hereinafter referred to as SEA) was chosen over the Southgate Federation of Teachers, and was certified as the sole bargaining representative for teachers employed by the Southgate Community School District (hereinafter called the Board).

The Board and the SEA negotiated contracts for the 1966–1967 and 1967–1968 school years. Another petition was filed and a secret ballot election was held in February 1968. The SEA received 96 votes and the Federation 87. The SEA remained certified as the sole bargaining representative and commenced negotiations with the Board, which is

---

[1] MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[2] MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*

[3] 1965 PA 379, effective July 23, 1965.

[4] Section 12 reads in part:

"Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the board:

"(a) By a public employee or group of public employees, or an individual or labor organization acting in their behalf, alleging that 30% or more of the public employees within a unit claimed to be appropriate for such purpose wish to be represented for collective bargaining and that their public employer declines to recognize their representative as the representative defined in section 11, or assert that the individual or labor organization, which has been certified or is being currently recognized by their public employer as the bargaining representative, is no longer a representative as defined in section 11; * * * ."

a public employer within the meaning of PERA. Agreement on a contract was reached September 4, 1968, for the 1968–1969 and 1969–1970 school years. The agreement was very detailed and was divided into 26 articles concerning wages, working conditions, grievance procedures, *et cetera.* Article 2, § A, of the agreement contained the disputed agency shop provisions. This article provided in part:

### "ARTICLE II—MEMBERSHIP, FEES AND PAYROLL DEDUCTIONS

"A. All teachers as a condition of continued employment *shall either:*

"1. Sign and deliver to the Board an assignment authorizing deduction of *membership dues* and assessments of the Association (including the National and Michigan Education Associations) and such authorization shall continue in effect from year to year unless revoked in writing between June 1 and September 1 of a given year. Such sums shall be deducted during the eight (8) consecutive pay periods commencing the 1st pay of October from the salary of all teachers authorizing deductions and remitted within thirty (30) days to the Association. Teachers joining the Association at the beginning of the second semester and signing and delivering to the Board an assignment authorizing deduction of said membership dues, may have dues for that semester deducted from the six (6) consecutive pay periods commencing the 1st pay of February, or

"2. Sign and deliver to the Board an assignment authorizing deduction of a representation fee equivalent to the dues and assessments of the Association (including the National and Michigan Education Associations). Such sums shall be deducted during the eight (8) consecutive pay periods commencing the 1st pay of October from the salary of all teachers authorizing deductions and remitted within thirty (30) days to the Association. Teachers beginning their employment at the beginning of the second semester and signing and delivering to

the Board an assignment authorizing deduction of said representation fees may have fees for that semester deducted from the six (6) consecutive pay periods commencing the 1st pay of February. Any teacher who wishes to pay cash for this fee must pay the full amount to the Treasurer of the S.E.A. within thirty (30) days of the commencement of employment.

"In the event the representation fee shall not be paid, the Board upon receiving a signed statement from the Association indicating the teacher has failed to comply with this condition, shall immediately notify said teacher that his services shall be discontinued at the end of the current semester. The Board shall follow the dismissal procedure of the Michigan Tenure Act. The refusal of said teacher to contribute fairly to the costs of negotiation and administration of this and subsequent agreements is recognized as just and reasonable cause for termination of employment. However, if at the end of the semester, the teacher, or teachers, receiving the termination notice shall then be engaged in pursuing any legal remedies contesting the discharge under this provision before the Michigan Tenure Commission, or a court of competent jurisdiction, such teacher's service shall not be terminated until such time as such teacher or teachers have either obtained a final decision as to the validity or legality of such charge, or such teacher or teachers have ceased to pursue the legal remedies available to them by not making a timely appeal of any decision rendered in said manner by the Tenure Commission, or a court of competent jurisdiction.

"This Section is subject to an indemnity agreement executed September 3, 1968 between the parties which is incorporated herein by reference."

The SEA by memorandum dated September 16, 1968, and sent to all nonmembers of the SEA, gave notice of its intention to enforce all the provisions of the collective bargaining agreement negotiated on behalf of all employees in the bargaining unit. On September 26, 1968, plaintiffs, public school teachers employed by the Board but not members

of the SEA,[5] filed complaint in Wayne County Circuit Court requesting injunctive relief from the collective bargaining agreement and specifically Article 2, § A, the agency shop provision, and sought damages in the amount of $100,000 against the Board, the SEA, Donald Kouba, its President, and Jack Frucci, Chairman of its negotiating team. The trial court upheld the validity of the agency shop provision and denied the temporary injunctive relief requested. The trial court certified that a controlling question of law was involved, and plaintiffs herein made application to the Court of Appeals for leave to appeal and, also, filed application for leave to appeal to this Court prior to decision of the Court of Appeals. On June 26, 1969, we denied such application.

The Court of Appeals reversed and remanded for a hearing to determine what percentage of the fees provided to be paid to SEA is used for the cost of administering and negotiating the contract. The Court of Appeals held that the agency fee could be neither higher nor lower than this amount without violating § 10, subd (c), of the PERA.[6] The Court of Appeals further held that on remand the SEA and the Board had the burden of "going forward" with the evidence and the proof on this issue. If such a percentage could be determined, the Court of Appeals held, then the agency shop provision was valid. 24 Mich App 179.

The defense moved for clarification of the opinion, for reconsideration, and for a hearing en banc

---

[5] Plaintiff Smigel was an officer of the rival Southgate Federation of Teachers.

[6] Section 10(c), MCLA 423.210; MSA 17.455(10), reads:

"It shall be unlawful for a public employer or an officer or agent of a public employer * * * (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization."

by the Court of Appeals. These motions were denied on August 3, 1970. In view of the overriding importance of this issue to labor relations in the public sector, we granted leave to appeal. 384 Mich 772.

In addition to the parties to the appeal, the Detroit Federation of Teachers, the American Federation of State, County and Municipal Employees, the Michigan Employment Relations Commission and the Michigan Conference of Teamsters were permitted to file briefs as Amicus Curiae.

Several issues have been raised on this appeal, the threshold one being whether the Michigan Employment Relations Commission has primary and exclusive jurisdiction of this matter, and thus whether the circuit court properly had jurisdiction herein?

Another basic issue presented is whether the agency shop provision between the Southgate Community School District and the Southgate Educational Association is valid under Michigan law and under the United States and Michigan Constitutions? Both parties view this issue as divisible into sub-issues, and each will be dealt with within the framework of this issue.

The question of the jurisdiction of the circuit court to hear this case has been raised on appeal for the first time by defendants and by the Michigan Employment Relations Commission as Amicus Curiae. Both parties urge that the Michigan Employment Relations Commission has primary jurisdiction of this matter and that the circuit court erred in considering same. Plaintiffs correctly point out that defendants did not object to the jurisdiction of the circuit court and even relied on circuit court opinions regarding similar situations in support of their view of the validity of the

agency shop provision. However, it is well settled
that lack of subject matter jurisdiction cannot be
waived. *Warner v Noble,* 286 Mich 654, 659 (1938).
A court may and, indeed, has a duty to inquire
into its jurisdiction. This has been accepted as law
in Michigan since *Greenvault v Farmers & Me-
chanics' Bank,* 2 Doug (Mich) 498 (1847).[7] We thus
turn to the issue of whether the circuit court
properly had jurisdiction in this matter.

## *PRIMARY JURISDICTION*

The Michigan Employment Relations Commis-
sion as Amicus Curiae, contends that the circuit
court lacked jurisdiction over this matter. It con-
tends that plaintiffs should have first sought relief
through the MERC and that the MERC could have
provided adequate relief. It further contends that
an adequate appeal is provided to the Court of
Appeals by the provisions of the PERA.

The deference of courts to administrative agen-
cies and the declining of jurisdiction in favor of
these agencies is designed to meet several policy
goals. The most important one is the belief that
these agencies possess special expertise which are
well suited in the first instance to deal with the
factual questions involved. The United States Su-
preme Court accepted this theory in the field of
labor relations in *Myers v Bethlehem Shipbuilding
Corp,* 303 US 41; 58 S Ct 459; 82 L Ed 2d 638
(1938). The National Labor Relations Board had
issued a complaint against Bethlehem charging it
with an unfair labor practice. The defendant ob-
tained an injunction in district court against the
holding of the hearing before the NLRB. The
United States Supreme Court reversed the lower

---

[7] See, also, *Warner v Noble, supra,* and cases cited therein. 21 CJS,
Courts, § 114, p 175.

court and held the district court had no jurisdiction to issue an injunction. The Court further held that the NLRB had exclusive jurisdiction in such cases.

Our Court has recognized the doctrine of primary jurisdiction and judicial deference to the expertise of administrative agencies. In *Slezenger v Liquor Control Commission,* 314 Mich 644 (1946), defendant Commission had revoked plaintiff's liquor license and plaintiff requested an injunction against defendant to restrain it from physically retrieving the license. The trial court dismissed the complaint and this Court affirmed, holding that review by certiorari as provided by statute was a complete and adequate remedy and that an injunction would not lie. Plaintiff had alleged procedural irregularities in the hearing, and we held these could have easily been corrected on an appeal as provided by statute. See, also, *Martin v Liquor Control Commission,* 315 Mich 284 (1946), and *Norman v Board of Examiners of Barbers,* 364 Mich 360 (1961).

In *Labor Relations Division, Michigan Road Builders' Association v State Labor Mediation Board,* 330 Mich 176 (1951), plaintiffs sued defendant and requested an injunction to restrain proceedings under a strike election notice. The action was dismissed by the trial court, and the Supreme Court affirmed. Plaintiffs, acting on behalf of their members, had often entered into contracts with various unions. In July 1946, such an agreement was made with the Operative Plasterers and Cement Finishers International, AFL. The agreement was renewed in August 1948, and had not been terminated. The State Labor Mediation Board had issued a notice of a strike election to be held on June 10, 1950. Plaintiffs contended that the Board

had violated the statute in the designation of the bargaining unit, those eligible to vote, and of the place for the election to be held. Our Court stated (p 182):

"Plaintiffs in this case sought equitable relief on the ground that, under the factual situation existing, the order of the defendant board was improper, unauthorized by statute, and invalid. Inasmuch as the issue in the instant case relates solely to procedure, the merits of the claim are not before us. We see no bar to presenting the facts asserted by the bill of complaint, on which plaintiffs rely, in an application to this Court for an appropriate remedial writ. If the existence of such facts, or any of them, is challenged, the method provided by the statute for the determination of disputed matters is adequate. As we understand plaintiffs' position, they do not question the power of the legislature to limit the jurisdiction of the circuit court in equity if an adequate remedy is otherwise afforded. Without undertaking to lay down a definite rule that shall be applicable under any and all circumstances, it is our conclusion that the questions sought to be raised in this case may be determined by following the procedure indicated by the legislature."

Plaintiffs' allegations dealt specifically with the factual questions—designation of the bargaining unit, designation of those eligible to vote, and place for the election to be held. The doctrine of primary jurisdiction was clearly applicable here because these matters required special expertise, and if there was any error committed there was an adequate remedy provided by statute.[8]

---

[8] For other cases where our Court has upheld the primary jurisdiction of an administrative agency and prevented an aggrieved party from seeking relief outside the statutory procedure when the dispute was basically factual, see *Gaidamavice v Newaygo Board of County Road Commissioners*, 341 Mich 280 (1954); *Lajiness v Yaeger*, 352 Mich 468 (1958); *Royal Oak School Dist v State Tenure Commission*, 367 Mich 689 (1962); and *Benton Harbor School Dist v State Tenure Commission*, 372 Mich 270 (1964).

Moreover, it has been held that the administrative agency has the authority in the first instance to determine its own jurisdiction and that injunction or declaratory judgment will not lie to challenge the jurisdiction of an administrative agency. *Garden City School Dist v Labor Mediation Board,* 358 Mich 258 (1959); *Labor Mediation Board v Jackson County Road Commissioners,* 365 Mich 645 (1962).

Plaintiffs, in opposition to this, rely on several cases from the United States Supreme Court which permitted plaintiffs to file lawsuits without going before the Labor Mediation Board. *Smith v Evening News Association,* 371 US 195; 83 S Ct 267; 9 L Ed 2d 246 (1962), involved a lawsuit filed in Wayne County Circuit Court by plaintiff-employee against his employer seeking damages for breach of a collective bargaining agreement. Plaintiff alleged that the employer discriminated against him because of his union activity. It was conceded that such conduct would violate § 8(a)(3) of the National Labor Relations Act.[9] The circuit court held that jurisdiction was vested solely in the National Labor Relations Board and dismissed the complaint. The Michigan Supreme Court affirmed. 362 Mich 350 (1961). The United States Supreme Court reversed, holding that such a lawsuit could be maintained by an individual employee and that state court jurisdiction was not pre-empted under the doctrine of *San Diego Building Trades Council v Garmon,* 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959), stating (pp 197–198):

---

[9] National Labor Relations Act, § 8(a)(3), 61 Stat 140 (1947), 29 USCA 158:

"(a) It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * * ."

"In *Lucas Flour [Local 174, Teamsters v Lucas Flour Co,* 369 US 95; 82 S Ct 571; 7 L Ed 2d 593 (1962)] as well as in *Atkinson [Atkinson v Sinclair Refining Co,* 370 US 238; 82 S Ct 1318; 8 L Ed 2d 462 (1962)] the Court expressly refused to apply the pre-emption doctrine of the *Garmon* case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord."

The Court further said (p 200):

"The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301 has thus not survived. * * * To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do."

However, as seen by the above, this case arose under § 301 of the Labor Management Relations Act.[10] The Michigan public employment relations act has no provision similar to § 301, and thus this

---

[10] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat 156 (1947), 29 USCA 185(a).

case is distinguishable on its facts. Likewise, *Humphrey v Moore,* 375 US 335; 84 S Ct 363; 11 L Ed 2d 370 (1964), which relied on § 301 of the Labor Management Relations Act, is also distinguishable and not applicable to this case.

There are, however, exceptions to the doctrine of primary jurisdiction as stated above. In *Diggs v State Board of Embalmers and Funeral Directors,* 321 Mich 508 (1948), plaintiff filed an action to set aside revocation of his license after a hearing by the Board. The Board's motion to dismiss was denied, and the Supreme Court affirmed. Plaintiff alleged that the statute under which the hearing was held was unconstitutional. The Court stated (pp 513–514):

"If plaintiff's position is correct, *in other words, if the entire statute is unconstitutional,* then the provisions with reference to an appeal from an order of defendant board would necessarily fall with the rest of the act. It is scarcely logical to say that plaintiff is bound to press a remedy ostensibly granted by the statute the validity of which he assails.

"This Court has repeatedly held that in cases where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, *the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved."* (Emphasis added.)

This exception, where a plaintiff challenges the unconstitutionality of the statute, was followed in *Asta v Department of Revenue,* 338 Mich 505 (1953). In the recent case of *Judges of the 74th Judicial District v Bay County,* 385 Mich 710 (1971), our Court upheld in part the right of plaintiffs to obtain declaratory relief without the necessity of exhausting their administrative remedies. It

appears to us that the present case would fit under this exception to the rules requiring that a party exhaust his administrative remedies prior to seeking judicial relief.

The basic facts are agreed upon by the parties. The questions involved are questions of law which this Court must ultimately decide. Plaintiffs in their complaint contend that the agency shop provision violated both the teachers' tenure act and The Michigan Penal Code (MCLA 750.353 *et seq.;* MSA 28.585 *et seq.).* The special expertise of the Commission is not helpful to the Court in determining these questions of law. Moreover, as Professor Roger Crampton succinctly points out in an article entitled, *The Doctrine of Exhaustion of Administrative Remedies in Michigan,* 44 Mich State Bar Journal, No 7, July 1965, pp 10–20, one other factor that the courts consider in determining whether to require exhaustion of administrative remedies, is the importance of the question involved. The briefs filed by both parties and the Amicus Curiae briefs filed by the several additional parties, indicate that the validity or invalidity of the agency shop provision will have far-reaching consequences upon collective bargaining in the public sector in Michigan. Professor Crampton asserts that this is an additional factor for the courts to consider in dispensing with the requirement of exhaustion of administrative remedies, and we agree. Thus, we hold that the complaint for injunctive relief was a proper procedure in this case and the circuit court did have jurisdiction of this matter.

Plaintiffs contend that since the PERA does not explicitly permit the agency shop, it, therefore, must forbid it. They cite *Benson v School District No 1 of Silver Bow County,* 136 Mont 77; 344 P2d

117 (1959). In that case, plaintiffs, teachers who had refused to join the union, brought a proceeding for mandamus and declaratory judgment. The Supreme Court of Montana ruled in their favor. The School District had approved a master agreement on April 2, 1956, which provided salary increases based on the training and experience of the teachers and, also, required union membership (union shop) by September 4, 1956. The contract further provided that in the event nonunion teachers who had tenure failed to join the union, they should not receive any of the benefits or salary increases that were awarded to other teachers. The difference in salary between union and nonunion teachers the first year was $300. The Court stated (p 85):

"Hence, we come to the question whether the Union Security Clause in the contract is void and illegal as contended by plaintiffs. We hold that it is.
"It is not competent for the school trustees to require union membership as a condition to receiving the increased salary. So far as this case is concerned it is sufficient to say that the Legislature has not given the school board authority to make the discrimination sought to be imposed here."

This case is distinguishable from the present situation because of the blatant discrimination against nonunion teachers. Nonunion teachers were forbidden to receive raises and, hence, there was a clear economic inducement and discrimination in favor of union members. This, of course, would violate § 10(c) of the PERA. However, no discrimination is made between union and nonunion members in regard to wages or other working conditions in the Southgate contract. Both members and nonmembers receive the same pay scale depending on seniority and education.

In *Tremblay v Berlin Police Union,* 108 NH 416; 237 A2d 668 (1968), the Court had before it a declaratory judgment dealing with the validity of certain provisions of the union contract negotiated between a policemen's local union and the Berlin Police Commission. The case was transferred to the Supreme Court on an agreed statement of facts. The contract created a union shop and the Supreme Court upheld the validity of the contract, construing it as an agency shop provision. The Court stated (pp 422–423):

"It is argued that this union shop clause of the collective bargaining agreement is invalid as an unlawful delegation of municipal power and is 'ultra vires and void.' There is no law which prohibits a union shop in this state and RSA 275:1 prohibits any effort to coerce or compel any person into an agreement 'not to join or become a member of any labor organization' as a condition of securing or continuing in any employment. The Legislature has declared as a matter of public policy that collective bargaining for municipal employees is a proper public purpose. * * * Opinions may differ as to the desirability of collective bargaining for public employees but that discretionary decision has been lodged in the municipalities. * * *

"In the present case the police commissioners and the union have, in effect, declared in advance under the collective bargaining agreement that union security is a reasonable requirement for the efficient and orderly administration of the police department. Stutz, Collective Bargaining by City Employees, 15 Lab. L.J. 696 (1964). This is a decision they have the right to make because (1) the Legislature authorized it, (2) ultimate control remains in the municipality and the police commissioners to hire and fire personnel and manage the police department, (3) the overriding provisions of the collective bargaining agreement provide that the powers delegated to the union are subordinate to and must be consistent with the powers of the city and its agents in its control over the administration of the

police department. Laws 1963, 275:4, 5. See, Comment, Labor Problems in Public Employment, 61 Nw. U. L. Rev. 105, 133 (1966).

"Our conclusion [is] that this union shop clause, as construed, is valid * * * ."

We agree with the reasoning of the Court in *Tremblay.* The School District and the SEA in negotiating this contract believed that the agency shop provision would promote the goals set out in the PERA. The failure of the Legislature to specifically include a union shop provision does not mean that it cannot be negotiated and agreed upon by the parties. We, therefore, hold that an agency shop provision may be voluntarily agreed upon by the parties and that such an agreement does not violate the provisions of the PERA.

Plaintiffs rely on the report of the Advisory Committee on Public Employee Relations submitted to Governor George Romney, February 15, 1967, and the fact that bills have been introduced in the Legislature to allow agency shops as proof that it is not permitted under current law. The statements of legislators and other citizens provide only some evidence of legislative intent; they are not conclusive on this Court. The question of the validity of the agency shop has been one of uncertainty under Michigan law. The fact that certain legislators attempted to clarify this question by new legislation before a Court decision is not inconsistent with the belief that agency shop is permitted under present law.

Plaintiffs also contend that since the PERA adopts in some sections the wording of the NLRA almost verbatim, it must mean that where the PERA does not follow the NLRA it meant to exclude its terms. However, the legislative history of the two acts are not parallel and, as defendants

point out, § 7 of the NLRA permits workers to join unions or refrain from joining unions, but § 9 of the PERA has no similar proviso for not joining unions. This would mean that under plaintiffs' analysis all workers must join unions. This, of course, is not required by the PERA, but does point up the difficulty in attempting to compare the two pieces of legislation and in assuming that any section of the NLRA left out in the PERA was meant to be excluded.

Finally, plaintiffs contend that the difference in private employment and public employment requires a different result under the PERA than under the NLRA. They contend that the PERA was not adopted to strengthen the collective economic power of public employees. Plaintiffs contend that public employment differs radically from private employment and that public employees should not have the rights of private employees. However, while this theory was the prevailing view in 1947,[11] when the Hutchinson Act was passed, it is not true today. The Legislature, by amendment in 1965,[12] clearly gave public employees many of the rights that employees in the private sector enjoy, including the right to join a labor organization,[13] and the obligation of an employer to bargain with such organization.[14]

## TEACHERS' TENURE ACT

Plaintiffs contend that the teachers' tenure act (MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.)* pre-

---

[11] See *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363, 371–372 (1971), for discussion of the view of the employees' rights under the Hutchinson Act of 1947 (No 336).

[12] 1965 PA 379.

[13] MCLA 423.209; MSA 17.455(9).

[14] MCLA 423.215; MSA 17.455(15).

cludes the discharge of teachers for failure to pay the agency fee as provided in the Southgate contract. They cite *Rehberg v Ecorse Township School District No 11,* 330 Mich 541 (1951), where, in discussing the purpose of the tenure act, the Court stated (p 545):

"The teachers' tenure act has not been construed in Michigan, but the following has been said about such acts elsewhere:

"Its purpose is to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference. *Ehret v Kulpmont Borough School District,* 333 Pa 518 (5 A2d 188) [1939].

"It promotes good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders. *State, ex rel. Anderson, v Brand,* 214 Ind 347 (5 NE2d 531, 913, 110 ALR 778, 781) [1937]. Also, same on rehearing, 214 Ind 347 (7 NE2d 777) [1938] 303 US 95 (58 S Ct 443, 82 L Ed 685, 113 ALR 1482) [1938]; and *Lost Creek School Township v York,* 215 Ind 636 (21 NE2d 58, 127 ALR 1287) [1939].

"In *State, ex rel. Wood, v Board of Education of City of St. Louis,* 357 Mo 147 (206 SW2d 566, 567 [1947]), it is stated that the purpose of the act is to protect and improve State education by retaining in their positions teachers who are qualified and capable and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause. See, also, The Teachers' Contractual Status by I. M. Allen, page 77, Bureau of Publications, Teachers College, Columbia University (1928)."

The teachers' tenure act was first passed in 1937.[15] The act is designed to apply to an innumerable variety of situations that may arise. Article IV, § 1, of the teachers' tenure act, MCLA 38.101; MSA 15.2001, provides in part:

[15] 1937 PA (Ex Sess) 4.

"Discharge or demotion of a teacher on continuing
tenure may be made only for reasonable and just cause,
and only after such charges, notice, hearing, and deter-
mination thereof, as are hereinafter provided."

The words "reasonable and just cause" are not
defined, but are to be determined on a case-by-case
basis. The legislative policy behind this section is
clearly to prevent the firing of qualified teachers
because of arbitrary and capricious actions on the
part of school boards.

In the instant case the requirement of the
agency shop fee is neither arbitrary nor capricious.
It was arrived at after mutual bargaining by the
Board and the elected representatives of all the
teachers. All teachers prior to commencing their
employment were notified as to what was required
of them. Article 2 of the Southgate contract
clearly states what was required of the teachers in
regard to the agency fee. Any teacher violating
this provision of the contract would be entitled to
all the safeguards provided by the tenure act and
could not be discharged until after notice and
hearing by the tenure board. The requirement of
the agency shop provision is not different from a
contract which, for example, changed the starting
time from 9 o'clock to 8:30. In both cases, the
teachers have notice of what is required of them,
and a teacher is not being discharged merely
because he favors or does not favor a union. Thus,
the Southgate agency shop provision does not vio-
late the terms of the teachers' tenure act permit-
ting dismissal for "reasonable and just cause"
after such charges, notice, hearing and determina-
tion thereof.

The Court of Appeals, in construing the validity
of the agency shop fee, held that the amount of
the agency fee could only be the nonmembers'

proportionate share of the cost of negotiating and administering the contract involved, which might or might not be equivalent to membership dues. The Court of Appeals' opinion cited no authority for the proposition, and we have been unable to find a case so holding. While the Legislature could pass such a law involving a proportionate determination of union dues, it has not done so, and we hold that the provisions of the PERA are not violated when nonmembers are required to pay an equivalent amount as the union dues as an agency shop fee.

In *National Labor Relations Board v General Motors Corp,* 373 US 734; 83 S Ct 1453; 10 L Ed 2d 670 (1963), the United States Supreme Court upheld the validity of an agency shop provision which required nonunion members to pay to the union a sum equivalent to the initiation fee and periodical dues of union members. The Court held that the agency shop provision did not violate the NLRA, § 8(a)(3), which makes it an unfair labor practice to encourage or discourage membership in a labor organization.

The Court of Appeals held the SEA provision violative of the PERA, § 10(c), which makes it an unfair labor practice to discriminate in regard to hire, terms, or other conditions of employment in order to encourage or discourage membership in a labor organization. We believe that the PERA does permit the charging of a fee equivalent to the dues of union members for nonunion members. We further believe there are several problems with the rule laid down by the Court of Appeals.

It would be difficult, if not impossible, to determine the exact percentage of union dues which make up the cost of negotiating and administering a contract. For example, if a representative of the

NEA or the MEA meets with a negotiating team of the SEA and attempts to assist them in their negotiations with the school board, the SEA and all of the teachers in the Southgate School District may be aided. However, exactly how much is this worth? The local union officers may gain certain bargaining skills by attending NEA or MEA sponsored seminars concerned with collective bargaining. What is the dollar value of such a seminar? What about travel and accommodation expenses for attending the seminar? These types of questions—and others—would have to be answered if the Court of Appeals' test were to be followed. In the absence of a direct statutory directive, we decline to follow that test.

The rule stated by the Court of Appeals would also interfere with the powers of the MERC. The Court of Appeals in holding that any amount over the proportionate share would violate § 10(c) of the PERA, directed the circuit court to hold a hearing on the matter. However, the Legislature has decreed that the MERC has jurisdiction where charges of unfair labor practices are made.[16] Thus, the decision of the Court of Appeals has directly invaded the function of the MERC and overruled the specific legislative intent to vest the MERC with jurisdiction in matters involving unfair labor practices.

Finally, the Court of Appeals' holding would require a union to disclose a great deal of information on the internal functioning of the union. This may, in many cases, violate the members' constitutional rights of freedom of association and the right to privacy (*NAACP v Alabama,* 357 US 449;

---

[16] MCLA 423.216; MSA 17.455(16), states:

"Violations of the provisions of section 10 shall be deemed to be unfair labor practices remediable by the labor mediation board * * * ."

78 S Ct 1163; 2 L Ed 2d 1488 [1958]; *Bates v Little Rock,* 361 US 516; 80 S Ct 412; 4 L Ed 2d 480 [1960]), as well as unduly interfering with the internal functions of a union. *Mayo v Great Lakes Greyhound Lines,* 333 Mich 205 (1952).

Thus, the Court of Appeals erred in remanding for a hearing on the proportionate cost of the representation fee to the cost of negotiating the contract, and we hold that a representation fee equivalent to the amount of union dues is valid and not discriminatory to the nonunion members of the labor organization who receive like benefits as members through the collective bargaining process conducted by the duly designated representative bargaining unit.

The Court of Appeals is reversed insofar as it remanded this matter to the circuit court for determination of the agency fee, and is affirmed in its upholding of the validity of the agency shop provision. No costs, a public question being involved.

BLACK, J. *(dissenting).* I agree with the reasoning of and disposition made by Division 1 (24 Mich App 179) and therefore dissent.