ABOOD v DETROIT BOARD OF EDUCATION

WARCZAK v DETROIT BOARD OF EDUCATION

1. LABOR RELATIONS—STATUTES—PROSPECTIVE APPLICATION—AGENCY
SHOP CLAUSE—PUBLIC EMPLOYEES.

Statutes are prospective in their operation unless the contrary
clearly appears from the context of the statute itself, and the
mere expression by the Legislature that an amendment to the
public employment relations act which authorizes agency shop
provisions in employment contracts was enacted to "reaffirm
the continuing public policy" of the state is not sufficient to
overcome the presumption favoring prospective application of
the amendment (MCLA 423.210).

2. LABOR RELATIONS—AGENCY SHOP—PUBLIC EMPLOYEES—SERVICE
FEES—POLITICAL ACTIVITY—CONSTITUTIONAL RIGHTS.

Employees who are forced to contribute service fees to a collective
bargaining representative may not be deprived of First Amend-
ment freedom of expression by use of their service fees for
political causes to which they object, but, in order to preserve
this right, the employee must make known to the union those
causes and candidates to which he objects and the remedy
would be restitution to the employee of that portion of his
money expended by the union over his objection.

Appeals from Wayne, Charles Kaufman, J. Sub-
mitted Division 1 February 5, 1975, at Detroit.

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 350, 351.

[2] 48 Am Jur 2d, Labor and Labor Relations §§ 292–295.

Constitutionality, construction, and application of 18 USC § 610,
prohibiting corporations and labor organizations from making
contributions or expenditures in connection with Federal elec-
tions. 1 L Ed 2d 1918.

Refusal of member of labor union to pay assessment imposed by it
for purposes of promoting or drafting contemplated legislation as
ground for suspension or expulsion. 175 ALR 397.

(Docket Nos. 19465, 19523.) Decided March 31, 1975. Leave to appeal denied, 395 Mich —.

Complaints by D. Louis Abood and others, and by Christine Warczak and others, against the Detroit Board of Education, Detroit Federation of Teachers, and all members of the federation, for injunctive relief from enforcement of an agency shop clause in a collective bargaining agreement, and for a declaratory judgment on the validity of the clause. Summary judgments for defendants. Plaintiffs appeal, and cases consolidated. Reversed and remanded.

*Keller, Thoma, McManus, Toppin & Schwarze, P. C.* (by *Dennis B. Dubay)* and *Webster & Kilcullen,* for plaintiffs.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.,* for defendants.

Before: McGREGOR, P. J., and J. H. GILLIS and QUINN, JJ.

PER CURIAM. Plaintiffs Christine Warczak and others, all Detroit teachers, filed a complaint for declaratory judgment on November 7, 1969, challenging the constitutional and statutory validity of the agency shop provision in the collective bargaining agreement between the Detroit Board of Education and the Detroit Federation of Teachers. Plaintiffs filed the cause of action on behalf of themselves and all others similarly situated. Named as defendants were the Detroit Board of Education, the Detroit Federation of Teachers and all teachers who are members of the federation.

Defendants moved for summary judgment, which was granted on January 19, 1970 by the

trial court. Plaintiffs appealed the grant of the summary judgment. The Michigan Supreme Court granted plaintiffs leave to appeal and set aside the summary judgment entered in favor of defendants, based on the decision in *Smigel v Southgate School District,* 388 Mich 531; 202 NW2d 305 (1972). The case was remanded to the circuit court "for further proceedings consonant herewith".

Thereafter, in the trial court, plaintiffs filed a motion for suspension of dues-deduction authorizations. The defendants, on the other hand, filed a motion for summary judgment based on the then recent amendment to the public employment relations act authorizing agency shop provisions in collective bargaining agreements between public employers and public employees. MCLA 423.210; MSA 17.455(10).

The trial court granted defendants' motion for summary judgment and denied plaintiffs' motion to suspend dues deductions. In its opinion, the trial court stated that the amendment should be given retroactive effect. Plaintiffs appealed. On March 22, 1974, the Court of Appeals, on its own motion, entered an order consolidating this appeal with another pending appeal. *Abood v Detroit Board of Education.*

In the *Abood* case, the complaint is essentially the same as that filed in the *Warczak* case, except that the named plaintiffs are more numerous and do not claim to represent any others than themselves. They also allege that they have been threatened with dismissal and are requesting injunctive relief to restrain the enforcement of the agency shop clause. A motion for summary judgment was granted in favor of defendants in that case and plaintiffs appealed.

I

*Should MCLA 423.210; MSA 17.455(10), effective
June 14, 1973 and authorizing agency shop provi-
sions in public employment contracts, be given
retroactive effect so as to validate the agency shop
provision in the contract entered into between the
Detroit Federation of Teachers and the Detroit
Board of Education?*

In the *Smigel* case, *supra,* the Supreme Court of
Michigan found that an agency shop provision in a
contract between the Southgate Education Associa-
tion and the Southgate Community School District
was prohibited by § 10 of the public employment
relations act [PERA].

Chief Justice T. M. KAVANAGH pointed out in his
opinion that there was a significant distinction in
Michigan's labor law between public and private
employees.

"Though MCLA 423.16; MSA 17.454(17) is nearly
identical to MCLA 423.210; MSA 17.455(10) in respect
to the requirement of employer neutrality, the statute
regarding private employment includes one very impor-
tant provision which is not found in the public employ-
ment relations act. MCLA 423.14; MSA 17.454(15) con-
stitutes an authorization of union security clauses
whether in the form of 'closed shop', 'union shop' or
'agency shop'." 388 Mich at 539–540; 202 NW2d at 306.

Since such an authorization was not included by
the Legislature in the PERA, the Supreme Court
concluded that the agency shop provision in *Smi-
gel* was prohibited by the PERA.

This was the state of the law when the *Abood*
and *Warczak* cases were remanded to the circuit
court. Subsequently, however, the Legislature
amended the PERA to provide:

"That nothing in this act or in any law of this state

shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section 11 to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative". MCLA 423.210; MSA 17.455(10).

In the same section, the Legislature gave some indication of its intent in enacting the amendment.

"(2) It is the purpose of this amendatory act to reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require, if such requirement is negotiated with the public employer, that all employees in the bargaining unit shall share fairly in the financial support of their exclusive bargaining representative by paying to the exclusive bargaining representative a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative." MCLA 423.210; MSA 17.455(10).

In ruling that the amendment in question should be given retroactive application, the trial court stated that, by clear and unequivocal words of intent, the Legislature indicated its desire that the amendment be given such retroactive application. We respectfully disagree.

The most often-quoted statement of the law concerning retroactivity is found in *Detroit Trust Co v Detroit,* 269 Mich 81, 84; 256 NW 811, 812–813 (1934):

"We think it is settled as a general rule in this State, as well as in other jurisdictions, that all statutes are prospective in their operation excepting in such cases as

the contrary clearly appears from the context of the statute itself.

" 'Indeed, the rule to be derived from the comparison of a vast number of judicial utterances upon this subject, seems to be, that, even in the absence of constitutional obstacles to retroaction, a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention.' Endlich, Interpretation of Statutes, § 271."

See also, *In re Davis' Estate,* 330 Mich 647, 650–651; 48 NW2d 151 (1951), *Briggs v Campbell, Wyant & Cannon,* 379 Mich 160, 164–165; 150 NW2d 752 (1967), *Olkowski v Aetna Casualty,* 53 Mich App 497, 503; 220 NW2d 97 (1974).

Considering "the occasion of the enactment" of the amendment, one might conclude that it should be given retroactive effect. However, as noted in *Detroit Trust Co, supra,* that is only one element. While that element may favor retroactivity, it is still necessary to consider the language of the amendment itself and to determine the Legislature's intention.

The amendment in question states that its purpose is to "reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require * * * that all employees in the bargaining unit shall share fairly in the financial support of their exclusive bargaining representative".

The Legislature's use of the word "reaffirm" seems to indicate that it was their feeling that such was always the policy of this state. However,

*Smigel* held to the contrary. That the Legislature felt that it had always been the public policy of this state to permit agency shop clauses in the public sector, and that it said so in the amendment, is not enough to overcome the presumption favoring prospective application of the amendment.

Therefore, it is our conclusion that the trial court erred in giving retroactive application to the amendment.

## II

*Does the agency shop clause violate plaintiffs' First and Fourteenth Amendment rights securing freedom of speech and freedom of association?*

In *Railway Employees' Department v Hanson,* 351 US 225, 238; 76 S Ct 714, 721; 100 L Ed 1112, 1134 (1956), the Supreme Court considered the question whether a union shop agreement forces workers into ideological and political associations which violate their right to freedom of conscience, freedom of association, and freedom of thought protected by the Bill of Rights.

The Court held that "the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work * * * does not violate either the First or the Fifth Amendments". See also *Buckley v American Federation of Television & Radio Artists,* 496 F2d 305, 313 (CA 2, 1974).

However, the Court did not consider whether or not funds collected pursuant to an agency shop clause could constitutionally be used for purposes unrelated to collective bargaining. That issue was not presented in *Hanson,* but it is squarely before us in the case at bar.

MCLA 423.210; MSA 17.455(10) provides for "a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative".

The political activities of labor unions are well-recognized. It is reasonable to assume that at least a portion of every union's budget goes to activities that could be termed political, *e.g.,* support of candidates sympathetic to the union cause and lobbying for the passage of bills in the Legislature. Since the amendment to MCLA 423.210; MSA 17.455(10), does not limit the nonmember's contribution to his proportionate share of the costs of collective bargaining, it is clear that the amendment sanctions the use of nonunion members' fees for purposes other than collective bargaining.

In *International Association of Machinists v Street,* 367 US 740; 81 S Ct 1784; 6 L Ed 2d 1141 (1961), the United States Supreme Court faced a situation that is nearly on all fours with the case at bar. *Street* involved the same provision of the Railway Labor Act which was considered in *Hanson, supra.* But in *Street* six employees brought action, on behalf of themselves and of employees similarly situated, alleging that the money each was thus compelled to pay to hold his job was in substantial part used to finance the campaigns of candidates for Federal and state offices whom he opposed, and to promote the propagation of political and economic doctrines, concepts and ideologies with which he disagreed.

The Supreme Court did not pass directly on the constitutional issues, instead construing the statute to deny railroad unions the right, over the employee's objection, to use his money to support political causes which he opposes. Since the statute under consideration here admits of no such

construction, the constitutional issue requires decision.

We have before us then, two powerful countervailing public policies. We are asked, on the one hand, to preserve freedom of expression, and, on the other, to promote labor stability. But freedom of expression is a constitutional right so basic to our form of government that it must be jealously guarded. This is particularly true where, as here, employees are compelled by the government to support the collective bargaining activities of an organization which they prefer not to join. Justice Douglas expressed this concern well in his concurring opinion in *Street:*

"If an association is compelled, the individual should not be forced to surrender any matters of conscience, belief, or expression. He should be allowed to enter the group with his own flag flying, whether it be religious, political, or philosophical; nothing that the group does should deprive him of the privilege of preserving and expressing his agreement, disagreement, or dissent, whether it coincides with the view of the group, or conflicts with it in minor or major ways; and he should not be required to finance the promotion of causes with which he disagrees." 367 US at 776; 81 S Ct at 1804; 6 L Ed 2d at 1165.

Therefore, we conclude that the agency shop clause, as prospectively authorized by the amendment to MCLA 423.210; MSA 17.455(10), could violate plaintiffs' First and Fourteenth Amendment rights.

First, however, it should be noted that this is not a true class action. As the Supreme Court pointed out in *Street, supra:*

"Any remedies, however, would properly be granted only to employees who have made known to the union

officials that they do not desire their funds to be used for political causes to which they object * * * . From these considerations, it follows that the present action is not a true class action, for there is no attempt to prove the existence of a class of workers who had specifically objected to the exaction of dues for political purposes." 367 US at 774; 81 S Ct at 1803; 6 L Ed 2d at 1164.

Thus it is that whatever relief is fashioned can only be applied to those Detroit teachers who have specifically protested the use of their funds for political purposes to which they object.

Further, the Supreme Court made it clear in *Street* that injunctive relief is not the proper remedy:

"Restraining the collection of all funds from the appellees sweeps too broadly, since their objection is only to the uses to which some of their money is put. Moreover, restraining collection of the funds as the Georgia courts have done might well interfere with the appellant unions' performance of those functions and duties which the Railway Labor Act places upon them to attain its goal of stability in the industry." 367 US at 771; 81 S Ct at 1801; 6 L Ed 2d at 1162.

The Court suggested two possible remedies. 367 US at 774–775; 81 S Ct at 1803; 6 L Ed 2d at 1164–1165. The first is an injunction against expenditure for political causes opposed by each complaining employee of a sum, from those moneys to be spent by the union for political purposes, which is so much of the moneys exacted from him as is the proportion of the union's total expenditures made for such political activities to the total union budget.

The second method would be restitution to each individual employee of that portion of his money

which the union expended, despite his notification, for the political causes to which he had advised the union he was opposed. This is the method we prefer since, in each instance, the drawing up of a financial statement will be required to determine the proportion of union funds used for a particular purpose, and this method will least interfere with unions carrying out their daily functions.

To reiterate briefly, employees who are forced to contribute service fees to a collective bargaining representative may not be deprived of First Amendment freedom of expression. But, in order to preserve this right, the employee must make known to the union those causes and candidates to which he objects. The remedy then would be restitution to the employee of that portion of his money expended by the union over his objection.

In the case at bar the plaintiffs made no allegation that any of them specifically protested the expenditure of their funds for political purposes to which they object. Therefore the plaintiffs are not entitled to relief on this basis.

The judgment of the lower court must be reversed, however, as to the retroactive application given to MCLA 423.210; MSA 17.455(10).

Reversed and remanded. No costs, a public question being involved.