DETROIT BOARD OF EDUCATION v PARKS

ABOOD v DETROIT BOARD OF EDUCATION

WARCZAK v DETROIT BOARD OF EDUCATION

KYES v DETROIT BOARD OF EDUCATION

Docket Nos. 65818-65821. Argued March 8, 1983 (Calendar No. 6).— Decided June 27, 1983.

Anne B. Parks, Christine Warczak, D. Louis Abood, Alberta M. Kyes, and others, brought various actions, eventually consolidated, in the Wayne Circuit Court between 1969 and 1975 against the Detroit Board of Education and the Detroit Federation of Teachers, challenging the agency shop provision in contracts between the board and the union which required all non-union teachers to pay agency service fees to the union in an amount equal to union dues or face dismissal. Parks was voluntarily dismissed as a plaintiff and thereafter was discharged by the board for refusing to pay the fees. The State Tenure Commission ordered her reinstatement. The Wayne Circuit Court, Charles J. Kaufman, J., granted the board and the union partial summary judgment in *Abood, Warczak,* and *Kyes,* and reversed the order of the commission in *Parks.* The Court of Appeals, M. J. Kelly, P.J., and M. F. Cavanagh and Elliott, JJ., affirmed and remanded the cases for further proceedings, holding that a tenured teacher could be discharged for failing to pay agency service fees and that the teacher tenure act is not applicable to the cases (Docket Nos. 46812, 78-3515—78-3517). The teachers appeal.

In an opinion by Justice Brickley, joined by Chief Justice Williams and Justices Kavanagh, Levin, and Ryan, the Supreme Court *held:*

A tenured teacher may be discharged for failing to pay agency service fees to an authorized bargaining representative, and neither the substantive nor the procedural provisions of the teacher tenure act apply to such a discharge.

1. Discharge may be a remedy under the public employment

REFERENCE FOR POINTS IN HEADNOTES

[1-3] 48 Am Jur 2d, Labor and Labor Relations §§ 16, 1190.

relations act for failure to pay agency service fees where payment of such fees is a term and condition of employment subject to collective bargaining and the union and the employer agree to the remedy. The fact that the union and the employer could agree to a less harsh remedy or that the union could resort to a civil action to recover the fees does not preclude the use of discharge as a remedy.

2. The teacher tenure act was not intended to apply to labor disputes; rather, the public employment relations act controls as the dominant law regulating public employee labor relations. The express language of PERA permitting agency shop clauses in collective-bargaining agreements provides sufficient grounds for finding the "reasonable and just cause" standard of the teacher tenure act for discharge of a teacher inapplicable in a situation where the teacher fails to pay agency service fees and the agreement provides for discharge.

3. The procedural provisions of the teacher tenure act apply where a determination of a teacher's competency is involved and careful scrutiny is warranted. The elaborate procedures were not intended to be employed where the issue is nonpayment of agency service fees. Under PERA, a procedure exists to protect a teacher from a factually incorrect claim of nonpayment in the filing of an unfair labor practices claim and adjudication before the Michigan Employment Relations Commission which is more than sufficient to satisfy due process.

Affirmed in part and remanded.

98 Mich App 22; 296 NW2d 815 (1980) affirmed in part.

1. SCHOOLS — TEACHERS — AGENCY SHOP — AGENCY SERVICE FEES.

A tenured teacher may be discharged from employment for failure to pay agency service fees to an authorized bargaining representative where the payment of such fees is a term and condition of employment subject to collective bargaining and the representative and the employer agree to the remedy; the fact that a less harsh remedy could be agreed upon or that resort could be had to civil litigation to recover the fees does not preclude the use of discharge as a remedy (MCL 423.210[1][c]; MSA 17.455[10][1][c]).

2. SCHOOLS — TEACHERS — AGENCY SHOP — AGENCY SERVICE FEES.

The teacher tenure act was not intended to apply to labor disputes involving the failure of a teacher to pay agency service fees where required by a collective-bargaining agreement; in such disputes, the public employment relations act controls as

the dominant law regulating public employee labor relations (MCL 38.101, 423.210[2]; MSA 15.2001, 17.455[10][2]).

3. SCHOOLS — TEACHERS — AGENCY SHOP — AGENCY SERVICE FEES.

The discharge of a tenured teacher for failure to pay agency service fees is controlled by the provisions of the public employment relations act; neither the substantive nor the procedural provisions of the teacher tenure act apply (MCL 38.101 *et seq.*, 423.210[1] *et seq.;* MSA 15.2001 *et seq.*, 17.455[10][1] *et seq.*).

*Keller, Thomas, Schwarze & Schwarze, P.C.* (by *David E. Kempner),* for Parks, Abood, Warczak, and Kyes.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Theodore Sachs* and *Mary Ellen Gurewitz),* for the Detroit Board of Education and the Detroit Federation of Teachers.

BRICKLEY, J. These consolidated cases present the same legal issues. Appellants contend that a tenured teacher cannot be discharged for failing to pay agency service fees to an authorized bargaining representative. Alternatively, they contend, if discharge is permissible, resort must be had to the substantive and procedural provisions of the teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* We disagree.

We find it best, as did the Court of Appeals, to consider this case in the factual setting of *Parks.*[1]

---

[1] The lengthy and precedent-setting history of these cases was set forth by the Court of Appeals. We reproduce its summary here for the convenience of the reader:

"Parks was originally a plaintiff in *Warczak v Detroit Bd of Ed,* one of the consolidated appeals herein, which was filed in November of 1969 in the Wayne County Circuit Court. Plaintiffs in that case sought a ruling that the agency shop clause * * *, included for the first time in the collective bargaining agreement for the years 1969-1971, was contrary to various provisions of the United States and Michigan Constitutions and to statutes of the State of Michigan, including the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and the teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* The *Warczak* complaint also alleged that

Anne B. Parks had been a teacher in the Detroit Public Schools since 1935. Beginning with the

a 'substantial part' of the agency shop fees required of nonmembers of the DFT were not being used solely for collective bargaining purposes but for 'activities and programs which are economic, political, professional, scientific and religious'. In January, 1970, Judge Kaufman granted defendants' motion for summary judgment for failure to state a claim. The order stated that the challenged agency shop clause 'is valid and of full force and effect according to its terms', and that the clause 'does not contravene the Constitution of the United States or of the State of Michigan or the statutes of the State of Michigan', including the PERA and the tenure act. Because of its decision in *Smigel v Southgate Community School Dist,* 388 Mich 531; 202 NW2d 305 (1972), the Supreme Court vacated this judgment and remanded to the circuit court for further proceedings in December of 1972. 389 Mich 755 (1972).

"Meanwhile, in 1970, the complaint in *Abood v Detroit Bd of Ed* was filed and was consolidated with *Warczak* for the remand proceedings. In response to *Smigel,* the Legislature amended § 10 of the PERA specifically to allow a public employer and an exclusive bargaining representative to include an agency shop clause in a collective bargaining agreement. Defendants' renewed motion for summary judgment was granted by Judge Kaufman in December of 1973. This order stated that the 1973 amendment to PERA authorized agency shop clauses, both prospectively and retrospectively, and restated the holdings of the 1970 order. The plaintiffs in *Warczak* and *Abood* appealed the 1973 summary judgment to this Court, asserting error in the circuit court's retroactive application of the PERA amendment and in the finding that the agency shop clause was constitutional. In *Abood v Detroit Bd.of Ed,* 60 Mich App 92; 230 NW2d 322 (1975), this Court reversed the circuit court's holding that the PERA amendment applied retroactively. We also held that the agency shop clause was constitutional but that plaintiffs could not be compelled to pay for non-collective-bargaining activities. However, as plaintiffs had failed to list the objectionable activities with specificity, they had failed to state a cause of action on this issue. When review of this decision was denied by the Michigan Supreme Court, plaintiffs appealed to the United States Supreme Court. While that appeal was pending, the complaint in *Kyes v Detroit Bd of Ed* was filed. In an opinion issued May 23, 1977, the United States Supreme Court agreed with the Court of Appeals that the agency shop clause is constitutional insofar as fees are used for collective bargaining purposes but unconstitutional to the extent that it compels plaintiffs to support other political or ideological activities of which they do not approve. *Abood v Detroit Bd of Ed,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977). The Supreme Court held that plaintiffs had adequately stated a cause of action as to these objectionable activities, and the Court of Appeals decision was vacated and remanded for further proceedings upon the issue.

"After remand to circuit court in September of 1977, the case was consolidated with *Kyes.* Also in September, 1977, plaintiffs moved for

1969-1971 contract, the Detroit Federation of Teachers, Local 231, AFT, AFL-CIO, the autho-

an order allowing escrow payments of the agency shop fees. This motion was denied, and no appeal was taken. In February of 1978, the circuit court granted defendants' motion to dismiss Anne Parks and Genevieve Repeta as plaintiffs for failure to pay agency shop fees. In March, 1978, Parks was discharged from her employment by the Board for failure to pay the fees, and she appealed her discharge to the State Tenure Commission. Repeta apparently retired at this time. In April, 1978, defendants filed a 'Motion for Partial Accelerated and Summary Judgment of Dismissal, On Remand, *Nunc Pro Tunc',* seeking reaffirmance of the circuit court's prior orders of December, 1973, and February, 1978. On August 16, 1978, Judge Kaufman issued an order granting defendants' motion which included the following findings:

"1. The 1973 PERA amendment prospectively authorized agency shop clauses;

"2. The agency shop clauses contained in the agreements between the Board and the DFT 'were valid and of full force and effect according to their terms, effective June 14, 1978';

"3. The agency shop clause does not contravene the United States or Michigan Constitutions or any statute of the State of Michigan including the PERA and the tenure act, among others;

"4. The tenure act is inapplicable, procedurally and substantively, to termination of teachers for noncompliance with an agency shop clause; and

"5. Plaintiffs Parks and Repeta are dismissed as parties plaintiff for failure to pay agency shop fees.

"The circuit court retained jurisdiction over the issues of whether or what portion of agency shop fees had been used for constitutionally objectionable purposes and whether the agency shop clause was enforced prior to 1973, when it was authorized. However, on the same day, August 16, 1978, Judge Kaufman also issued a stay of the circuit court proceedings pending exhaustion of internal union procedures for refund of the fees and denied plaintiffs' renewed motion for escrow of the fees. Leave to appeal from these orders was applied for and denied by this Court in October of 1978.

"Plaintiffs now appeal from the August 16, 1978, order granting partial summary judgment, especially paragraph 4 thereof, which they claim was never a part of the prior judgments of the circuit court and therefore never properly within its subject matter jurisdiction. As this appeal has now been consolidated with the *Parks* appeal and we decide the res judicata effect of *Abood* on *Parks,* we find it unnecessary to address the issue of jurisdiction in *Abood,* as the issue of the applicability of the tenure act was properly before the circuit court in *Parks.* We also find it unnecessary to deal with the issue of whether Parks was properly dismissed as a plaintiff for lack of standing because of her failure to pay the fees. The other issues raised in this case will be discussed and decided in the factual context presented in *Parks." Detroit Bd of Ed v Parks,* 98 Mich App 22, 46-48, fn 24; 296 NW2d 815 (1980).

rized bargaining agent for the teachers, and the Detroit Board of Education included in their contract an agency shop clause.[2] This contract provision required that all non-union teachers pay to the union "agency service fees" in an amount equal to the amount paid as dues by union members. The Detroit Board of Education was required to discharge employees who failed to pay.[3] Al-

The Court of Appeals conclusion that the 1973 or 1978 summary judgments issued in *Abood* were not res judicata in *Parks* has not been raised in this Court and is not considered. Also not raised or considered is the propriety of the trial court's dismissal of Parks from the *Abood* case.

[2] An agency shop agreement requiring the payment of agency service fees is a particular type of union security device. Such agreements provide that all employees represented by a union, regardless of whether they are union members, must pay a service fee to the union. Non-union member fees are equal to the amounts paid by union members as dues. Agency shop agreements have been held constitutional by the Supreme Court of the United States. *Abood v Detroit Bd of Ed,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977). In contrast, a "union shop" agreement not only requires the payment of dues, but also requires that the employee become a member of the union. "Union shop" agreements are expressly authorized under Michigan law for the private sector. MCL 423.14; MSA 17.454(15). No such "union shop" authorization exists for the public sector. See *Smigel v Southgate Community School Dist,* 388 Mich 531; 202 NW2d 305 (1972).

[3] The following provisions from the 1977-1979 contract are applicable to *Parks:*

"C. Union Membership Dues or Agency Shop Service Fees

"1. All employees employed in the bargaining unit, or who become employees in the bargaining unit, who are not already members of the Union, shall, within sixty (60) days of the effective date of this Agreement (as to present employees), or within sixty (60) days of their date of hire (as to future employees), become members, or in the alternative, shall as a continuing condition of employment, pay to the Union each month a service fee in an amount equal to the regular monthly Union membership dues uniformly required of employees of the Board who are members of the Union.

"2. The Board upon receiving a signed statement from the Union indicating that the employee has failed to comply with this condition shall immediately notify said employee that his/her services shall be discontinued at the end of sixty (60) days, and shall dismiss said employee accordingly.

"3. An employee who shall tender or authorize the deduction of membership dues (or service fees) uniformly required as a condition of acquiring or obtaining membership in the Union, shall be deemed to

though Parks initially paid the fees under protest, after the 1973-1974 contract year she refused further payment. In March of 1978, at the request of the union, the Detroit Board of Education discharged her. Parks appealed to the State Tenure Commission, and the commission ordered her reinstatement on the ground that the procedures of the teacher tenure act were not followed. The Wayne Circuit Court, on appeal by both the De-

meet the conditions of this Article so long as the employee is not more than sixty (60) days in arrears of payment of such dues (or fees).

"4. The Board shall be notified, in writing, by the Union of any employee who is sixty (60) days in arrears in payment of membership dues (or fees).

"5. If any provision of this Article is invalid under Federal or State law, said provision shall be modified to comply with the requirements of said Federal or State law.

"6. The Union agrees that in the event of litigation against the Board, its agents or employees arising out of this provision, the Union will co-defend and indemnify and hold harmless the Board, its agents or employees for any monetary award arising out of such litigation.

"7. The Board shall deduct from the pay of each employee from whom it receives an authorization to do so the required amount for the payment of Union dues or Agency Shop service fees. Checked-off authorization for Union dues or Agency Shop service fees which were executed prior to the execution of this Agreement shall remain of full force and effect. Checked-off dues or fees, accompanied by a list of employees from whom they have been deducted and the amount deducted from each, and by a list of employees who had authorized such deductions and from whom no deduction was made and the reason therefore *[sic]*, shall be forwarded to the Union office no later than thirty (30) days after such deductions were made. Employees who have not authorized check-off of Union dues or Agency Shop service fees may pay such dues or fees semi-annually, in advance, directly to the Union, not later than thirty (30) days after the employee's first work day each semester.

"8. The Board shall inform all present employees within thirty (30) days of the opening of the school year, and future employees and employees returning from leave within thirty (30) days of hire or return, of their obligations under this section; provided that the failure of the Board to so inform shall not be a defense to any employee who has failed to comply with the provisions of this section. The Board shall continue to notify the Union of all new hires, and returns from absence or leave, and separations."

We express no opinion as to whether we would reach different conclusions on the basis of the language in previous collective-bargaining agreements between the Detroit Board of Education and the union.

troit Board of Education and the union, reversed the decision of the commission. The Court of Appeals affirmed the decision of the circuit court. 98 Mich App 22; 296 NW2d 815 (1980). As relevant to the issues before this Court, the Court of Appeals held that a tenured teacher could be discharged for failing to pay agency service fees under a contract to that effect and that the teacher tenure act was both substantively and procedurally inapplicable. We granted leave to appeal to finally settle those aspects of this controversy. 411 Mich 970 (1981).

Section 10(1) of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* provides:

"It shall be unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9; (b) to initiate, create, dominate, contribute to or interfere with the formation or administration of any labor organization: Provided, That a public employer shall not be prohibited from permitting employees to confer with it during working hours without loss of time or pay; (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization: Provided further, That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section 11 to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative; (d) to discriminate against a public employee because he has given testimony or instituted proceedings under this act; or (e) to refuse to bargain collectively with the representatives of its public employees, subject to the

provisions of section 11." MCL 423.210(1); MSA 17.455(10)(1).

Our first concern is with the meaning of the phrase "condition of employment" in the proviso of § 10(1)(c). Appellants contend that discharge is not a permissible remedy available to the union and the employer when a public employee breaches the condition of employment of paying agency service fees.

In construing PERA, this Court has frequently sought guidance from federal court decisions construing analogous provisions of the National Labor Relations Act, 29 USC 151 *et seq.* See *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 636; 227 NW2d 736 (1975), *app dis sub nom Crestwood Ed Ass'n v Bd of Ed,* 427 US 901 (1976). The present language of PERA § 10(1)(c) is quite similar to the language presently used in § 8(a)(3) of the NLRA, even though the two sections have quite different histories.

As originally proposed in Congress, § 8(3) of the Wagner Act, 49 Stat 449, the predecessor to § 8(a)(3) of the present NLRA, merely forbade employers from discriminating against employees in order to encourage or discourage membership in a union. In Congress, the fear was expressed that this language standing alone would forbid the use of union-security agreements. See *NLRB v General Motors Corp,* 373 US 734; 83 S Ct 1453; 10 L Ed 2d 670 (1963). To allay that fear, the following proviso was added to § 8(3):

"*Provided,* That nothing in this [act] or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization * * * to require as a condition of employment membership therein".

The consistent interpretation of the federal proviso has been that discharge is a permissible remedy for the breach of this contractual condition of employment. See, *e.g., Radio Officers' Union of the Commercial Telegraphers Union, AFL v NLRB,* 347 US 17; 74 S Ct 323; 98 L Ed 455 (1954); *NLRB v Brotherhood of Teamsters, Local 85,* 458 F2d 222 (CA 9, 1972); *International Union of Electrical, Radio and Machine Workers, AFL-CIO Frigidaire Local 801 v NLRB,* 113 US App DC 342; 307 F2d 679 (1962), *cert den* 371 US 936 (1962). See, also, *Smigel v Southgate Community School Dist,* 388 Mich 531, 546; 202 NW2d 305 (1972). (Opinion of BRENNAN, J.)

As enacted, PERA § 10(3) merely prohibited discrimination against employees on the basis of their membership in a union. The fears of Congress for the federal system were realized in Michigan when the lack of a provision authorizing some form of union-security device in § 10(3) led to this Court's decision in *Smigel v Southgate Community School Dist, supra,* which struck down agency shop agreements as discriminatory. There, we found an agency shop agreement to be the practical equivalent of membership in a union. In direct response to this Court's decision in *Smigel,* the Legislature authorized agency shop agreements "to require as a condition of employment that all employees in the bargaining unit pay" agency service fees.

We find it inconceivable that, in adopting the phrase "to require as a condition of employment" from federal law, the Michigan Legislature did not also intend to adopt the construction placed on that language by the federal courts. Even without this authority, we would find it difficult to allow any other interpretation than the obvious—"condition of employment" as used in § 10(1)(c) means

that employment may be conditioned on payment of the agency service fees.

Appellants seek to avoid this conclusion by arguing that the phrase "condition of employment" is a term of art which can only be interpreted in light of PERA §§ 11 and 15. Section 11 refers to the recognition and responsibility of an exclusive bargaining representative and § 15 refers to the duty of the parties to bargain collectively "with respect to wages, hours, and other terms and conditions of employment * * *."

"Terms and conditions of employment," as used in these sections, it is obvious to us, refers to those things over which a union and an employer must bargain. *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44; 214 NW2d 803 (1974). Because breach of these "conditions" need not always result in discharge, appellants contend, neither should a failure to pay the agency dues result in discharge. We agree that discharge is not always a remedy for the violation of a condition of employment, but it is also clear that discharge can be a remedy, if so provided in the contract, as it was in this case. In other words, the remedy for an employee's failure to pay agency fees is a "term and condition of employment" subject to collective bargaining.

Appellants also argue that the availability of remedies less harsh than discharge precludes a finding that discharge is a permissible remedy.

Appellants' argument again misses the point. PERA § 10(1)(c) is permissive. Of course, nothing forbids the union and employer from agreeing on a less harsh remedy. A union and an employer could agree that agency service fees would be automatically deducted from each employee's paycheck by the employer. MCL 408.477; MSA 17.277(7) autho-

rizes such deductions without the consent of the employee when "required or expressly permitted * * * by a collective bargaining agreement". The collective-bargaining agreement here, however, does not require or expressly permit agency service fee deductions in the absence of a signed authorization by the employee. Instead, the collective-bargaining agreement here allows the employer to make an automatic payroll deduction "from the pay of each employee from whom it receives an authorization to do so * * *". Appellant Parks has not authorized a payroll deduction.

Another remedy available to the union would be a civil action against the employee for the recovery of agency service fees. Again, such a remedy could be provided for in the collective-bargaining agreement. See, *e.g., Eastern Michigan University Chapter of the American Ass'n of University Professors v Morgan,* 100 Mich App 219; 298 NW2d 886 (1980). Where, as in the present case, the employer and the union have expressly provided for the remedy of discharge, we will not, as a matter of policy, require preliminary resort to the cumbersome remedies available in litigation. We conclude that a union and an employer may validly agree that employees who fail to pay agency service fees must be discharged. The next question which must be answered, however, is how such a discharge is to be accomplished.

Article IV, § 1, of the teacher tenure act, in relevant part, provides:

"Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided." MCL 38.101; MSA 15.2001.

Appellants contend that the "reasonable and just cause" standard for discharge in the act can coexist with the proviso of PERA § 10, allowing discharge for failure to pay agency service fees. We disagree.

"This Court has consistently construed the PERA as the dominant law regulating public employee labor relations." *Rockwell v Crestwood School Dist, supra,* p 629. See, also, *Local 1383, International Ass'n of Fire Fighters, AFL-CIO v City of Warren,* 411 Mich 642; 311 NW2d 702 (1981); *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268; 273 NW2d 21 (1978). When there is a conflict between PERA and another statute, PERA prevails, diminishing the conflicting statute *pro tanto. Local 1383, International Ass'n of Fire Fighters, AFL-CIO v City of Warren, supra.*

The express language in the proviso of § 10 that "nothing * * * in any law of this state" shall preclude the inclusion of an agency shop clause in a collective-bargaining agreement alone provides sufficient grounds to find the "reasonable and just cause" provision of the teacher tenure act inapplicable. Furthermore, a review of the purpose of § 10 reveals a repugnancy between it and the reasonable and just cause standard of the teacher tenure act.

The purpose of PERA § 10(1)(c) is set forth in § 10(2):

"(2) It is the purpose of this amendatory act to reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require, if such requirement is negotiated with the public employer, that all employees in the bargaining unit shall share fairly in the financial support of their exclusive bargaining representative by

paying to the exclusive bargaining representative a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative." MCL 423.210(2); MSA 17.455(10)(2).

As the United States Supreme Court observed when comparing PERA § 10(1)(c) with its analogous federal provision, "[t]he desirability of labor peace is no less important in the public sector, nor is the risk of 'free-riders' any smaller." *Abood v Detroit Bd of Ed,* 431 US 209, 224; 97 S Ct 1782; 52 L Ed 2d 261 (1977). Imposition of a reasonable and just cause standard for discharge onto a contract provision requiring discharge for the failure to pay agency service fees does nothing to promote the legislative policy against free riders. It, instead, reads § 10(1)(c) out of PERA.

The reasonable and just cause standard of the teacher tenure act has been construed to forbid discharge unless the activity complained of bears a rational and specific relationship to a detrimental effect on the school and the students. See *Beebee v Haslett Public Schools,* 66 Mich App 718; 239 NW2d 724 (1976), *rev'd on other grounds* 406 Mich 224; 278 NW2d 37 (1979). The State Tenure Commission has held that the failure to pay agency service fees can never meet this standard. *Jackson v Swartz Creek Community Schools,* No 75-12 (State Tenure Commission, February 9, 1978). Imposition of the reasonable and just cause standard upon § 10(1)(c) of PERA would render it meaningless.

The primary purpose of the teacher tenure act is to maintain an adequate and competent teaching staff, free from political and personal interference. *Boyce v Royal Oak Bd of Ed,* 407 Mich 312; 285 NW2d 196 (1979). The act was not designed to

cover labor disputes. In *Rockwell, supra,* this Court found that the substantive provisions of the teacher tenure act were inapplicable when a teacher was discharged under PERA § 6 for engaging in an unlawful strike. We found that the express language of PERA § 6 controlled over the reasonable and just cause standard of the teacher tenure act. PERA § 10 is likewise controlling.

Appellants, however, contend that even if the teacher tenure act is substantively inapplicable to the present case, the procedural aspects of the teacher tenure act must govern the discharge of a teacher, even when the discharge is for the failure to pay agency service fees authorized by PERA § 10. Appellants note that PERA § 10, unlike § 6, contains no procedure for discharging a teacher who fails to pay agency service fees. Appellants argue that the discharge procedure contained in the teacher tenure act is not repugnant to PERA § 10, and that, therefore, a discharge can only take place within the procedural confines of the teacher tenure act. Appellants thus distinguish *Rockwell.* Nevertheless, we find the procedural aspects of the teacher tenure act irrelevant to a discharge for failing to pay agency fees.

The procedures of the teacher tenure act are designed to protect a tenured teacher from discharge for improper reasons, reasons other than those of professional competency. Of necessity, the often subjective determination of a teacher's competency must be carefully scrutinized. The teacher tenure act provides that prior to discharge a tenured teacher is entitled to written notice of the reasons for discharge at least 60 days prior to the end of the school year. A formal hearing must be held before the controlling board within 45 days. MCL 38.102, 38.104; MSA 15.2002, 15.2004. An

appeal by right to the State Tenure Commission is provided. MCL 38.121; MSA 15.2021. We cannot conclude that the Legislature intended to also use this elaborate procedure for the simple purpose of determining whether a teacher has, in fact, paid his agency service fees. More importantly, we find that a procedural scheme does exist to protect a teacher from a factually incorrect claim that the agency service fees have not been paid.

A union that improperly demands that an employee be discharged for the failure to pay agency service fees commits an unfair labor practice under PERA §§ 10(1)(c) and 16(a). An employer that improperly discharges an employee for failure to pay agency service fees likewise commits an unfair labor practice. The Michigan Employment Relations Commission has exclusive jurisdiction over unfair labor practices. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977). A teacher who contests the claim that his agency service fees were not paid, or in some other way contests the legality of the service fee, is free to file an unfair labor practice complaint. See, *e.g., Teamsters Local 328,* 1976 MERC Lab Op 166; *Garden City School Dist,* 1978 MERC Lab Op 1145. The procedure set forth in PERA for the adjudication of unfair labor practices before MERC is more than sufficient to satisfy any due process concerns that appellants may have.

We hold that neither the substantive nor the procedural provisions of the teacher tenure act apply when a teacher is discharged, pursuant to a contractual authorizing provision, for failure to pay agency service fees. The decision of the Court of Appeals, as far as it is not inconsistent with this opinion, is affirmed.

The case is remanded to the Wayne Circuit Court for further proceedings not inconsistent with this opinion.

WILLIAMS, C.J., and KAVANAGH, LEVIN, and RYAN, JJ., concurred with BRICKLEY, J.

CAVANAGH and BOYLE, JJ., took no part in the decision of this case.