HOWELL EDUCATIONAL SECRETARIES ASSOCIATION, MESPA
v HOWELL PUBLIC SCHOOLS

Docket No. 65493. Submitted June 8, 1983, at Lansing.—Decided
November 21, 1983. Leave to appeal applied for.

The Howell Public Schools Board of Education (school board)
entered into a collective-bargaining agreement with the Howell
Educational Secretaries Association, MESPA (union) for the
period between July 1, 1979, and June 30, 1982. The bargaining
unit which the union represented was comprised of secretarial
and clerical employees. Following a representation election
conducted in December, 1980, food service and paraprofessional
employees of the school board were accreted into the secretarial
and clerical employees' bargaining unit and the union was
certified to represent the entire bargaining unit. The newly
added group does not perform the same duties as those employ-
ees who previously comprised the bargaining unit. When nego-
tiations commenced concerning the creation of a collective-bar-
gaining agreement with respect to the newly accreted employ-
ees, the union took the position that noneconomic terms which
were contained in the existing collective-bargaining agreement
should automatically be made applicable to the newly added
group. The school board contended that none of the terms of
that agreement automatically applied to the newly added
group. The union thereafter filed an unfair labor practice
charge with the Michigan Employment Relations Commission
(MERC). MERC upheld the union's claim and ruled that the
school board committed an unfair labor practice when it re-
fused to apply the grievance, union security and employee
rights provisions of the previously created collective-bargaining
agreement to the newly added group. The school board appeals.
*Held:*

    1. Generally, grievance, union security and employee rights

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 48A Am Jur 2d, Labor and Labor Relations § 1770.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1000 *et seq.*
[3] 48A Am Jur 2d, Labor and Labor Relations § 1791.
[4] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*
  73 Am Jur 2d, Statutes §§ 145, 146, 193.

provisions in a collective-bargaining agreement do not automatically come into being. Although each of these subjects constitute conditions of employment which are proper subjects for collective bargaining, they are subjects which generally require the agreement of the parties.

2. The parties to collective-bargaining agreements may not be compelled to agree to substantive contractual provisions. An exception to this rule does not exist where a newly added group becomes part of a bargaining unit which is already governed by a collective-bargaining agreement where the newly added group does not perform the same duties as those employees who previously comprised the bargaining unit.

3. Whether the provisions sought to be applied to the newly added group are economic or noneconomic is irrelevant with respect to the application of the statutory prohibition against compelling parties to collective-bargaining agreements to agree to substantive contractual provisions.

4. The school board did not commit an unfair labor practice by refusing to automatically apply the noneconomic provisions to the newly added group.

5. The collective-bargaining agreement entered into between the school board and the secretarial and clerical employees did not contain language creating new rights in the accreted group.

6. The union's claim that to decline to automatically apply the pre-existing contract to the newly accreted employees would have the effect of denying them entrance into the bargaining unit which they elected to join is without merit.

Reversed.

1. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS.

Grievance, union security and employee rights provisions in a collective-bargaining agreement generally do not automatically come into being, but rather, constitute conditions of employment which are proper subjects for collective bargaining, generally requiring the agreement of the parties.

2. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — GOOD FAITH BARGAINING.

The Michigan public employment relations act imposes a duty on public employers to bargain in good faith concerning wages, hours and other terms and conditions of employment (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

3. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — NEWLY ADDED GROUPS.

The parties to collective-bargaining agreements may not be com-

pelled to agree to substantive contractual provisions regardless of whether they are economic or noneconomic issues; no exception to this rule exists where a newly added group becomes part of a bargaining unit which is already governed by a collective-bargaining agreement where the newly added group does not perform the same duties as those employees who previously comprised the bargaining unit (MCL 423.215; MSA 17.455[15]).

4. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — NATIONAL LABOR RELATIONS ACT — JUDICIAL CONSTRUCTION.

The Michigan public employment relations act was patterned after the National Labor Relations Act; accordingly, it may be presumed that the Legislature intended the courts, in construing the Michigan act, to rely on judicial construction of the federal act by federal courts and the National Labor Relations Board as precedent (MCL 423.201 et seq.; MSA 17.455[1] et seq.; 29 USC 151 et seq.).

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz*), for charging party.

*Thrun, Maatsch & Nordberg, P.C.* (by *Donald J. Bonato*), for respondent.

Before: DANHOF, C.J., and ALLEN and K. N. HANSEN,* JJ.

DANHOF, C.J. The Howell Public Schools Board of Education (school board) appeals as of right from an order of the Michigan Employment Relations Commission (MERC) which held that a group newly added to a collective-bargaining unit became automatically covered by the noneconomic provisions of the collective-bargaining agreement previously entered into between the school board and the Howell Educational Secretaries Association, MESPA (union). The issue presented is of first impression.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

In 1979, the school board entered into a collective-bargaining agreement with the union for the period between July 1, 1979, and June 30, 1982. At the time the agreement was reached, the bargaining unit which the union represented was comprised of secretarial and clerical employees. In December, 1980, a representation election was conducted by food service and paraprofessional employees employed by the school board. It is undisputed that the duties performed by these latter groups were not the same as those performed by the secretarial and clerical employees. Following the election, these latter employees were accreted into the secretarial and clerical employees' bargaining unit. The union was certified to represent the entire bargaining unit.

When negotiations commenced concerning the creation of a collective-bargaining agreement with respect to the newly accreted employees, the union took the position that noneconomic terms which were contained in the existing collective-bargaining agreement should automatically be made applicable to the newly added group. The school board contended that none of the terms of that agreement automatically applied to these employees. The union ultimately filed an unfair labor practice charge with MERC claiming, *inter alia,* that the school board's refusal to automatically apply any of the terms of the collective-bargaining agreement to the newly accreted employees constituted a violation of § 16 of the public employment relations act (PERA), MCL 423.216; MSA 17.455(16).

MERC upheld the union's claim and ruled that the school board committed an unfair labor practice when it refused to apply the grievance, union security and employee rights provisions of the

previously created collective-bargaining agreement to these employees.

We begin our analysis by noting that generally grievance, union security and employee rights provisions in a collective-bargaining agreement do not automatically come into being. On the contrary, although each of these subjects constitute conditions of employment which are proper subjects for collective bargaining, they are subjects which generally require the agreement of the parties. See, *e.g., Detroit Bd of Ed v Parks,* 417 Mich 268; 335 NW2d 641 (1983). Although PERA imposes a duty on public employers to bargain in good faith concerning wages, hours and other terms and conditions of employment it is well-established that parties to collective-bargaining agreements may not be compelled to agree to substantive contractual provisions. MCL 423.215; MSA 17.455(15); *H K Porter Co, Inc v National Labor Relations Board,* 397 US 99, 102; 90 S Ct 821, 823; 25 L Ed 2d 146, 150 (1970); *Rockwell v Crestwood School Dist Bd of Ed,* 393 Mich 616, 645; 227 NW2d 736 (1975). Therefore, the narrow issue presented in this case is whether an exception to the rule exists where a newly added group becomes part of a bargaining unit which is already governed by a collective-bargaining agreement where the newly added group does not perform the same duties as those employees who previously comprised the bargaining unit.

PERA was patterned after the National Labor Relations Act (NLRA). 29 USC 151 *et seq.* Therefore, it has often been held that it is presumed that our Legislature intended the courts, in construing PERA, to rely on interpretations given analogous provisions of the NLRA by federal courts and by the National Labor Relations Board

(NLRB). *Detroit Bd of Ed v Parks, supra; Rockwell, supra; Harris v Amalgamated Transit Union,* 122 Mich App 706; 333 NW2d 1 (1982). The leading NLRB decision with respect to this issue is *Federal-Mogul Corp, Bower Roller Bearing Div,* 209 NLRB 343 (1974). In *Federal-Mogul, supra,* it was the employer which unilaterally applied the terms of a previously negotiated collective-bargaining agreement to the newly accreted group of employees. In ruling that the employer's action constituted an unfair labor practice, the NLRB stated the following:

"We do not perceive either legal or practical justification for permitting either party to escape its normal bargaining obligation upon the theory that this newly added group must somehow be automatically bound to terms of a contract which, by its very terms, excluded them. Such a determination would appear to be at odds with the Supreme Court's holding in *H K Porter Co, Inc v NLRB.* In *H K Porter,* the Supreme Court noted that 'while the Board does have power * * * to require employers and employees to negotiate, it is without power to compel a company or a union to agree to any substantive contractual provision of a collective bargaining agreement.' Were the board to require unilateral application of the existing contract to the setup men we would, in effect, be compelling both parties to agree to specific contractual provisions in clear violation of the *H K Porter* doctrine. We understand the teaching of that case to be that we have no statutory authority here to force on these employees and their union, as well as the employer, contractual responsibilities which neither party has ever had the opportunity to negotiate.

"Our decision promotes bargaining stability, since a major consequence of the opposite view would be that in contract negotiations both parties would be held to be making agreements for groups of persons whose identity and number would be totally unknown to, and unpredictable by, either party. Costs of wages and

benefits under negotiation would thus become equally unpredictable, and informed negotiation of such benefits as health and pension plans would become well-nigh impossible. The unpredictable scope of the number, age groups, and other factors of coverage which are essential to develop cost data as to such items would leave negotiators in the dark as to how to make any reliable estimates of future costs. Bargaining under such conditions would be seriously handicapped.

"This points to another element of unfairness inherent in respondent's position. Though in this case it is the employer which seeks to have the Globed-in *[Globe Machine & Stamping Co,* 3 NLRB 294 (1937)] employees automatically covered by the existing contract, if we were to adopt respondent's—and our dissenting colleagues'—view, the same result would of course have to obtain in any case in which a union were to take the same position. That would create the only situation in law known to us in which individuals theretofore not a party to an agreement could, by their own unilateral action, vote themselves a share of the bargain which the other parties had agreed to between and for themselves." *Federal-Mogul, supra,* p 344. (Footnotes omitted.)

The decision in *Federal-Mogul, supra,* was subsequently followed by the NLRB in *Abex Corp-Aerospace Division & Oil, Chemical & Atomic Workers International Union, AFL-CIO,* 215 NLRB 665 (1974). See also *Henry Vogt Machine Co & United Steelworkers of America, AFL-CIO-CLC,* 251 NLRB 363 (1980). Although the NLRB decision in *Abex Corp, supra,* was overturned in *National Labor Relations Board v Abex Corp-Aerospace Div,* 543 F2d 719 (CA 9, 1976), the Court in that case drew a distinction between the situation presented therein and that which was involved in *Federal-Mogul, supra:*

"Without expressing any opinion concerning the cor-

rectness of the Board's decision in *Federal-Mogul Corp,* we decline to follow it here in view of the specific factual circumstances presented in this case. As was true in *Federal-Mogul,* a sufficient 'community of interest' was found between the originally excluded employees and those represented by an existing unit to permit the holding of a *Globe* election. In addition, however, in this case, the Regional Director found that the work performed by the excluded salaried employees was 'functionally similar' to that performed by certain employees within the existing bargaining unit. No such finding was evident in *Federal-Mogul* where the excluded employees were set-up men who prepared and checked machines for others to operate. Because only differences in fringe benefits and in some instances pay were involved while the services rendered by the employees included in the represented unit at the time the existing contract was adopted and those included as a result of the *Globe* election were nearly identical, we find the reasoning of the dissent as applied to this case persuasive and therefore deny the enforcement of the Board's order." 543 F2d 721. See also *Universal Security Instruments, Inc v National Labor Relations Board,* 649 F2d 247, 255 (CA 4, 1981).

In the present case, as noted earlier, the duties performed by the newly accreted groups were not similar to those performed by the secretarial and clerical workers already within the bargaining unit. Therefore, since we find the reasoning expressed in *Federal-Mogul, supra,* to be persuasive, we hold that the school board did not commit an unfair labor practice by refusing to automatically apply these terms to the newly accreted group.

The union seeks to draw a distinction between this case and *Federal-Mogul, supra,* by claiming that, in this case, the union only sought to compel the school board to apply the noneconomic provisions to the new group whereas in *Federal-Mogul, supra,* all terms and conditions of the existing

bargaining agreement were applied. We find this distinction to be without substance.

As noted earlier, the noneconomic terms which MERC ruled that the school board was obligated to apply are terms which generally require the agreement of the parties to become binding. *Detroit Bd of Ed v Parks, supra.* Whether the terms are economic or noneconomic is, in our opinion, irrelevant with respect to application of the statutory prohibition against compelling parties to collective-bargaining agreements to agree to substantive contractual provisions. MCL 423.215; MSA 17.455(15). Parties to collective-bargaining agreements often are willing to alter their demands with respect to economic issues in exchange for concessions by the other with respect to noneconomic terms. By eliminating from consideration these noneconomic issues, MERC effectively eliminated an important bargaining tool which the school board would otherwise have had at its disposal. Therefore, we reject the union's claim that *Federal-Mogul, supra,* does not apply to this case.

We also reject the union's claim that a provision in the collective-bargaining agreement entered into between the school board and the secretarial and clerical employees requires a finding that the parties intended that that agreement be applied to later accreted groups. Although the agreement recognized the possibility that employees might be accreted into the bargaining unit after the agreement was created and provided that such employees would suffer no diminution in the fringe benefits of which they were already possessed, that agreement contained no language creating new rights in the accreted group.

Finally, we also find without merit the union's

claim that to decline to automatically apply the pre-existing contract to the newly accreted employees would have the effect of denying them entrance into the bargaining unit which they elected to join. Our holding only requires that the parties bargain with respect to these terms. It does not preclude the parties from coming to an agreement on these terms which is identical to the agreement covering the original unit. Furthermore, when the contract between the original unit and the school board expires, the school board is obligated to bargain for a single contract to cover the entire unit. *Federal-Mogul, supra.*

Therefore, we reverse the decision of the Michigan Employment Relations Commission and hold that, under the circumstances of this case, the Howell Public Schools Board of Education did not commit an unfair labor practice by refusing to automatically apply the previously negotiated collective-bargaining agreement to the newly accreted group.

Reversed. No costs, interpretation of a statute being involved.